10/05/2004 15:17 FAX 7137183302     US ATTY APPEALS                    ☑024
Case 1:04-cv-00095   Document 10-2   Filed in TXSD on 10/05/2004   Page 1 of 29

21

1          DEFENDANT IRACHETA:  Yes.

2          THE COURT:  Jaime Leija-Martinez?

3          DEFENDANT LEIJA:  Yes, sir.

4          THE COURT:  Do you also understand that at the

5   conclusion of any term of imprisonment you receive you'll be

6   deported.

7               Do you understand that, Jose Elmer Cardenas

8   Najera?

9          DEFENDANT NAJERA:  Yes, sir.

10          THE COURT:  Roberto Iracheta-Gonzalez?

11          DEFENDANT IRACHETA:  Yes, sir.

12          THE COURT:  Jaime Leija-Martinez?

13          DEFENDANT LEIJA:  Yes, sir.

14          THE COURT:  Understanding all those things, do you

15   want to plead guilty, Jose Elmer Cardenas Najera?

16          DEFENDANT NAJERA:  Yes, sir.

17          THE COURT:  Roberto Iracheta-Gonzalez?

18          DEFENDANT IRACHETA:  Yes, sir.

19          THE COURT:  Jaime Leija-Martinez?

20          DEFENDANT LEIJA:  Yes, sir.

21          THE COURT:  All right.  Now, in your case, Jose

22   Francisco Garza-Rangel, the Government says that you've broke

23   the law by returning to this country illegally after you were

24   deported.  Do you understand that?

25          DEFENDANT GARZA:  Yes, sir.

1          THE COURT:  Do you have any questions about those

2   charges?

3          DEFENDANT GARZA:  No, sir.

4          THE COURT:  Do you understand the maximum penalty for

5   that offense is two years confinement, $250,000 fine, and a

6   one-year supervised release term, and a $100 special

7   assessment?

8          DEFENDANT GARZA:  Yes.

9          THE COURT:  And do you understand that a supervised

10  release term means that if you are on such a term and you

11  violate any of the conditions of it, you would be put back in

12  prison to do time consecutive to what you had all ready done

13  without credit for the time you were out?

14         DEFENDANT GARZA:  Yes, sir.

15         THE COURT:  And do you understand that at the

16  conclusion of any term of imprisonment you receive you'll be

17  deported?

18         DEFENDANT GARZA:  Yes, sir.

19         THE COURT:  Understanding all those things, do you

20  still want to plead guilty?

21         DEFENDANT GARZA:  Yes, sir.

22         THE COURT:  Has anybody threatened or forced any of

23  you to plead guilty when you didn't want to?

24              Jose Elmer Cardenas Najera?

25         DEFENDANT NAJERA:  No.

10/05/2004 15:17 FAX 7137183302          US ATTY APPEALS                                    ☑026
Case 1:04-cv-00095    Document 10-2    Filed in TXSD on 10/05/2004    Page 3 of 29

23

1          THE COURT:  Roberto Iracheta-Gonzalez?

2          DEFENDANT IRACHETA:  No, sir.

3          THE COURT:  Jose Francisco Garza-Rangel?

4          DEFENDANT GARZA:  No, sir.

5          THE COURT:  Jaime Leija-Martinez?

6          DEFENDANT LEIJA:  No, sir.

7          THE COURT:  Now, in your case Jose Elmer Cardenas

8  Najera, I understand that there's an agreement between you and

9  the Government.  I'm going to ask the United States attorney to

10  describe it.  Listen carefully.

11          MR. PONCE:  The Government, in return for a plea of

12  guilty to the indictment and a waiver of appeal rights as

13  indicated on the plea papers, the Government will recommend low

14  end of the guidelines for acceptance of responsibility.

15          THE COURT:  Is that you understanding of the

16  agreement?

17          DEFENDANT NAJERA:  Yes, sir.

18          THE COURT:  Other than that, has anybody made you any

19  promises to plea -- to have you plead guilty?

20          DEFENDANT NAJERA:  No.

21          THE COURT:  All right.  And in your case, Roberto

22  Iracheta-Gonzalez, I also understand that there's an agreement.

23  I'm going to ask the U.S. attorney to describe it.  Listen

24  carefully, sir.

25          MR. MARPOSON:  Your Honor, in exchange for the

JUDICIAL TRANSCRIBERS OF TEXAS, INC.

10/05/2004 15:18 FAX 7137183302    US ATTY APPEALS    ⓩ027
Case 1:04-cv-00095    Document 10-2    Filed in TXSD on 10/05/2004    Page 4 of 29

24

1   defendant's plea of guilty to the indictment and waiver of

2   appeal rights as outlined in the plea agreement, the Government

3   will recommend that he receive full credit for acceptance of

4   responsibility, be sentenced at the bottom of the guideline

5   level to which he scores, and receive one additional point

6   downward departure for acceptance.

7       THE COURT: Is that your understanding of the

8   agreement, Roberto Iracheta-Gonzalez?

9       DEFENDANT IRACHETA: Yes, sir.

10       THE COURT: Any other promises other than that?

11       DEFENDANT IRACHETA: No, sir.

12       THE COURT: And in your case, Jose Francisco Garza-

13   Rangel, has anybody made you any promises to get you to plead

14   guilty?

15       DEFENDANT GARZA: No, sir.

16       THE COURT: Okay. Then, Jaime Leija-Martinez, I

17   understand there's an agreement between you and the Government.

18   I'm going to ask the U.S. attorney to describe it. Listen

19   closely.

20       MR. MARPOSON: Your Honor, in exchange for the

21   defendant's plea of guilty to the indictment and waiver of

22   appeal rights as outlined in the plea agreement, the Government

23   will recommend that he receive full credit for acceptance of

24   responsibility, be sentenced at the bottom of the guideline

25   level for which he scores, and receive one additional point

1   downward departure for entering a guilty plea.

2           THE COURT:  Is that your understanding of the

3   agreement, Mr. Jaime Leija-Martinez?

4           DEFENDANT LEIJA:  Yes.

5           THE COURT:  Any other promises other than that?

6           DEFENDANT LEIJA:  No.

7           THE COURT:  All of you need to understand that Judge

8   Talge will not be able to determine the guideline range for

9   your sentences until after the preparation of a presentence

10  investigation.  That's a report prepared by the probation

11  department, which looks into your backgrounds and the

12  backgrounds of these offense.  You will have the opportunity of

13  reviewing those reports and making objections to them.

14          Do you understand that, Jose Elmer Cardenas

15  Najera?

16          DEFENDANT NAJERA:  Yes, sir.

17          THE COURT:  Roberto Iracheta-Gonzalez?

18          DEFENDANT IRACHETA:  Yes, sir.

19          THE COURT:  Jose Francisco Garza-Rangel?

20          DEFENDANT GARZA:  Yes, sir.

21          THE COURT:  Jaime Leija-Martinez?

22          DEFENDANT LEIJA:  Yes, sir.

23          THE COURT:  Do all of you understand that under

24  certain circumstances, Judge Talge could sentence you to a term

25  more or less severe than that called for by the guidelines?

10/05/2004 15:18 FAX 7137183302    US ATTY APPEALS    ☑029
Case 1:04-cv-00095    Document 10-2    Filed in TXSD on 10/05/2004    Page 6 of 29

26

1       Jose Elmer Cardenas Najera?

2           DEFENDANT NAJERA:  Yes, sir.

3           THE COURT:  Roberto Iracheta-Gonzalez?

4           DEFENDANT IRACHETA:  Yes, sir.

5           THE COURT:  Jose Francisco Garza-Rangel?

6           DEFENDANT GARZA:  Yes, sir.

7           THE COURT:  Jaime Leija-Martinez?

8           DEFENDANT LEIJA:  Yes, sir.

9           THE COURT:  Now, in your case, Jose Francisco Garza-

10      Rangel, you have the right to appeal your case at no charge to

11      yourself to a higher court.  Do you understand that?

12          DEFENDANT GARZA:  Yes, sir.

13          THE COURT:  The rest of you, under the terms of your

14      plea agreement, have surrendered certain appeal rights.  You

15      could, however, appeal at not cost to yourselves to a higher

16      court if you were -- from an illegal sentence or because you

17      were dissatisfied with your attorneys.

18              Do you understand that, Jose Elmer Cardenas

19      Najera?

20          DEFENDANT NAJERA:  Yes, sir.

21          THE COURT:  Roberto Iracheta-Gonzalez?

22          DEFENDANT IRACHETA:  Yes, sir.

23          THE COURT:  Jaime Leija-Martinez?

24          DEFENDANT LEIJA:  Yes, sir.

25          THE COURT:  Do all of you understand that there's no

10/05/2004 15:19 FAX 7137183302     US ATTY APPEALS                                    ☑030
Case 1:04-cv-00095   Document 10-2   Filed in TXSD on 10/05/2004   Page 7 of 29

27

1   parole in this country?  So if you are sentenced to do time,

2   you will not be released early on parole.

3                    Do you understand that, Jose Elmer Cardenas

4   Najera?

5                    DEFENDANT NAJERA:  Yes, sir.

6                    THE COURT:  Roberto Iracheta-Gonzalez?

7                    DEFENDANT IRACHETA:  Yes, sir.

8                    THE COURT:  Jose Francisco Garza-Rangel?

9                    DEFENDANT GARZA:  Yes, sir.

10                   THE COURT:  Jaime Leija-Martinez?

11                   DEFENDANT LEIJA:  Yes, sir.

12                   THE COURT:  Do all of you understand that in the

13  event your lawyers and the Government lawyers were to make a

14  recommendation to Judge Talge about a certain sentence, and she

15  didn't' follow that recommendation, you would not be able to

16  withdraw your guilty pleas.

17                   Do you understand that, Jose Elmer Cardenas

18  Najera?

19                   DEFENDANT NAJERA:  Yes, sir.

20                   THE COURT:  Roberto Iracheta-Gonzalez?

21                   DEFENDANT IRACHETA:  Yes, sir.

22                   THE COURT:  Jose Francisco Garza-Rangel?

23                   DEFENDANT GARZA:  Yes, sir.

24                   THE COURT:  Jaime Leija-Martinez?

25                   DEFENDANT LEIJA:  Yes, sir.

1    THE COURT:  Has anybody promised any of you a certain

2    sentence to plead guilty?  Now, I'm not asking about

3    discussions you've had with your lawyers about what might

4    happen.  I'm sure you've had those.  What I want to know

5    though, has anybody actually made you a promise of a sentence

6    to get you to plead guilty?

7            Jose Elmer Cardenas Najera?

8        DEFENDANT NAJERA:  No, sir.

9        THE COURT:  Roberto Iracheta-Gonzalez?

10       DEFENDANT IRACHETA:  No.

11       THE COURT:  Jose Francisco Garza-Rangel?

12       DEFENDANT GARZA:  No, sir.

13       THE COURT:  Jaime Leija-Martinez?

14       DEFENDANT LEIJA:  No, sir.

15       THE COURT:  Now in your case Jose Elmer Cardenas

16   Najera, I'm going to ask the United States attorney to tell me

17   the facts.  And I want you to listen very carefully to what he

18   says.

19       MR. PONCE:  On February the 17th, of the year 2003,

20   the defendant, Jose Elmer Cardenas Najera, was found west of

21   Los Indios, Cameron County, Texas by border patrol agents

22   conducting checks for aliens.  Through investigation and

23   questioning, it was determined that he was a citizen of Mexico

24   who had entered the United States illegally.  Furthermore, that

25   he had been previously deported, excluded or removed from the

1   United States in January of 2003, after having been convicted

2   of the aggravated felony of robbery in 1999.  He did not have

3   the consent of the Attorney General for reapplication for

4   admission into the United States when found.

5          THE COURT:  Is that -- is that what happened, Jose

6   Elmer Cardenas Najera?

7          DEFENDANT NAJERA:  Yes.

8          THE COURT:  Well, I'm going to recommend to Judge

9   Talge that she accept your guilty plea.

10         MR. PONCE:  Your Honor, on -- on the fax, I think

11   there was a typo.  It says in 1996 when it's January of 2003.

12   It's a typo, sorry.  I read it correctly.

13         THE COURT:  Well, all right.  That's on the fax

14   somewhere, what you're saying?

15         MR. PONCE:  Yes, sir.

16         THE COURT:  I'll ask you to fix that after we adjourn

17   here.

18         All right, in your case Roberto Iracheta-

19   Gonzalez, I'm going to ask the United States attorney to tell

20   me the facts.  So listen closely, sir.

21         MR. MARPOSON:  Your Honor, on April 18, 2003, the

22   defendant, Roberto Iracheta-Gonzalez was found in Brownsville,

23   Cameron County, Texas by border patrol agents conducting checks

24   for aliens.  During the investigation and questioning, it was

25   determined that he was a citizen of Mexico who had entered the

10/05/2004 04:15:29 FAX 7137183302    US ATTY APPEALS    @033
Case 1:04-cv-00095    Document 10-2    Filed in TXSD on 10/05/2004    Page 10 of 29

30

1    United States illegally.  Furthermore, that he had been

2    previously deported, excluded and removed from the United

3    States on January 12th, 1999, after having been convicted of the

4    aggravated felony of possession of marijuana in 1997.  The

5    defendant had not applied to the Attorney General or the

6    Secretary of Homeland Security for permission to reenter the

7    United States.

8            THE COURT:  Is that what happened Roberto Iracheta-

9    Gonzalez?

10            DEFENDANT IRACHETA: Yes, sir.

11            THE COURT:  All right.  I'm going to recommend to

12    Judge Talge that she accept your plea also.

13            Now, in the case of Jose Francisco Garza-Rangel,

14    I'm going to ask the United States attorney to tell me the

15    facts of your case, sir.  Listen closely.

16            MR. ESQUIVEL:  Your Honor, the facts will show that

17    on April 2nd of 2003, the defendant, Jose Francisco Garza-Rangel

18    was found in Brownsville, Cameron County, Texas, by border

19    patrol agents conducting checks for aliens in the Cameron   .

20    County jail.  During the investigation and questioning, it was

21    determined that he was a citizen of Mexico that had entered the

22    United States illegally.  Furthermore, that he has previously

23    been deported, excluded or removed from the United States on

24    May 2nd, 2002.  The defendant had not applied with nor received

25    consent of the Attorney General or the Secretary of Homeland

10/05/2004 15:20 FAX 7137183302          US ATTY APPEALS          ☒034
Case 1:04-cv-00095   Document 10-2   Filed in TXSD on 10/05/2004   Page 11 of 29

31

1   Security for permission to reenter the United States.

2              THE COURT:   Is that what happened Jose Francisco

3   Garza-Rangel?

4              DEFENDANT GARZA: Yes, sir.

5              THE COURT:   I'm going to recommend to Judge Talge

6   that she accept your plea also.

7              In B-03-348, Jaime Leija-Martinez, I'm going to

8   ask the United States attorney to tell me the facts.   Listen

9   carefully, sir.

10              MR. MARPOSON:   Your Honor, the defendant, an alien, a

11   non-citizen of the United States, was found in Cameron County,

12   Texas, on April 2, 2003, after having been deported on June 1,

13   2000 through Hidalgo, Texas.   The defendant was convicted of

14   the aggravated felony of possession of heroin on June 26th,

15   1998.   The defendant has not obtained consent to apply for

16   admission into the United States from the Attorney General or

17   the United States or Secretary of Homeland Security.

18              THE COURT:   Is that what happened, Jaime Leija-

19   Martinez?

20              DEFENDANT LEIJA: Yes, sir.

21              THE COURT:   I'm going to recommend to Judge Talge she

22   accept your plea.

23              I have signed orders in all of your cases

24   directing the Probation Department to prepare presentence   .

25   investigations by June the 12th.   As I said, you will have the

10/05/2004 15:21 FAX 7137183302          US ATTY APPEALS                    ☑035
Case 1:04-cv-00095   Document 10-2   Filed in TXSD on 10/05/2004   Page 12 of 29

32

1   opportunity of reviewing those and objecting to them, which

2   must be done by June 26th.  The final report must be submitted

3   by July 10th, and you will be sentenced by Judge Talge on July

4   28th.

5            Let me ask the attorneys in B-03-185, the *United*

6   *States against Jose Elmer Cardenas Najera*, if they feel that

7   I've complied with Rule 11 and are there questions that I

8   should ask and have not?

9            MR. PONCE:  Yes, sir, we feel that you have and we

10  have no further questions.

11           MR. DIEZ:  Yes, Your Honor, we no questions.

12           THE COURT:  In B-03-337, the *United States against*

13  *Roberto Iracheta-Gonzalez*, have I complied with Rule 11 and are

14  there any questions that I should ask that I have not?

15           MR. MARPOSON:  The Government feels that you have

16  complied, Your Honor, and has no further questions.

17           MR. WILDE:  Same announcement, Your Honor.

18           THE COURT:  In B-03-341, the *United States against*

19  *Jose Francisco Garza-Rangel*, have I complied with Rule 11 and

20  are there any questions that I should ask that I have not?

21           MR. ESQUIVEL:  The Government feels that you have

22  complied and we have no questions, Your Honor.

23           MR. AMADOR:  Same announcement from the defense, Your

24  Honor.

25           THE COURT:  B-03-348, the *United States against Jaime*

33

1   Leija-Martinez, have I complied with Rule 11 and are there any

2   questions that I should ask that I have not?

3          MR. MARPOSON:  The Government feels that you have

4   complied with Rule 11, Your Honor and we have no further

5   questions, Your Honor.

6          MR. WILDE:  Same announcement, Your Honor.

7          THE COURT:  All right, if there is nothing else, we

8   are being recessed then.  Thank you.

9      (These proceedings concluded at 11:23 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                    *  *  *  *  *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct
transcript from the electronic sound
recording of the proceedings in
the above-entitled matter.

_Dana Gerard / Js_
Signature of Transcriber

_09/11/03_
Date

_22-262_
JTT#

1

1

```
                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
```

United States District Court
Southern District of Texas
FILED

```
                       BROWNSVILLE DIVISION
```

SEP 1 4 2004

Michael N. Milby
Clerk of Court

```
                                          )
UNITED STATES OF AMERICA                  )
                                          )    CRIMINAL ACTION NO.
VS.                                       )    B-03-185
                                          )
JOSE ELMER CARDENAS NAJERA                )
                                          )
```

```
                              SENTENCING
             BEFORE THE HONORABLE HILDA G. TAGLE
                          JULY 28, 2003
```

APPEARANCES:

For the Government:            MR. OSCAR PONCE
                              Assistant United States Attorney
                              600 East Harrison, Suite 201
                              Brownsville, Texas  78520

For the Defendant:            MR. JAIME DIEZ
                              Jones & Crane
                              862 West Price Road
                              Brownsville, Texas  78520

Transcribed by:               HEATHER HALL
                              Official Court Reporter
                              600 E. Harrison, Box 16
                              Brownsville, Texas  78520
                              (956)548-2510

    Proceedings recorded by mechanical stenography, transcript
produced by computer.



GOVERNMENT
EXHIBIT
B

*ORIGINAL*

10/05/2004 15:22 FAX 7137183302     US ATTY APPEALS                    ☒039
Case 1:04-cr-00495 ... Document 10-2     Filed in TXSD on 10/05/2004     Page 16 of 29

2

1              THE COURT:  Let me call 03-CR-185, the United States of

2     America versus Jose Elmer Cardenas Najera.  What says the

3     Government?

4              MR. PONCE:  Oscar Ponce for the Government.  Ready.

5              THE COURT:  All right.  What says the defendant?

6              MR. DIEZ:  Jaime Diez for the defendant.  Present and

7     ready.

8          (The Court heard other matters.)

9              THE COURT:  All right.  03-CR-185, the United States of

10    America versus Jose Elmer Cardenas Najera.  Mr. Diez, have

11    you -- first of all, is there an objection to the report and

12    recommendation of the magistrate judge?

13.             MR. PONCE:  No objections.

14             MR. DIEZ:  No, Your Honor.

15             THE COURT:  Then the report is approved and is adopted

16    by the Court, and the defendant's plea of guilty is accepted.

17    And based upon the evidence in the record at re-arraignment, the

18    Court finds that the defendant, Jose Elmer Cardenas Najera, is

19    guilty of the offense of being an alien unlawfully found in the

20    United States after deportation having previously been convicted

21    of an aggravated felony as alleged in this indictment.  The

22    Court, having found the defendant guilty, will proceed with

23    sentencing.  There being a plea agreement, is there anything

24    else on behalf of the Government in connection with this plea

25    agreement?

10/05/2004 15:22 FAX 7137183302        US ATTY APPEALS                    ⊠040
Case 2:04-cv-00004... Document 10-2      Filed in TXSD on 10/05/2004    Page 17 of 29

                                                                              3

1              MR. PONCE:  Nothing else, Your Honor.

2              THE COURT:  All right.  Mr. Diez, you have reviewed this

3    presentence report with your client?

4              MR. DIEZ:  Yes, Your Honor, I have.

5              THE COURT:  And there is a motion for downward

6    departure, so you may address the Court.

7              MR. DIEZ:  Yes, Your Honor.  The defendant is 37 years

8    old.  He's from Mexico.  He has pretty much spent all his life

9    in the United States.  He came here when he was 17 years old.

10   That was 20 years ago.  All his family lives in Houston.  The

11   defendant was convicted back in 1999 for robbery, and that's

12   where he was serving time.  While he was serving time, he was

13   deported from the United States.

14        He has three children ages 12 -- 11, 8 and 5.  He submitted

15   letters from his spouse pretty much asking the Court to consider

16   leniency in this case as pretty much he will not be able to be

17   with his children now because of the prior incident and this

18   incident where he was not fully understanding the remedy of

19   having reentered back in the United States.  He was coming back

20   here to be back with his family.  His family really wants to go

21   back to Mexico.

22        My motion for downward departure goes to the -- there was an

23   additional point for an early plea, which was offered to my

24   client, and he had to take that plea on the day of arraignment.

25   On the day of arraignment, there was a problem where he had

10/05/2004 15:23 FAX 7137183302    US ATTY APPEALS                              ☑041
Case 1:04-cr-00495 Document 10-2    Filed in TXSD on 10/05/2004    Page 18 of 29

4

1   to -- the Court appointed him --

2          THE COURT:  Yeah, what was that all about?  Why was that

3   filed for substitution?

4          MR. DIEZ:  I believe there was -- there was a public

5   defender representing him, and I was appointed because there was

6   a problem.  I don't know the exact nature of the problem, and

7   there was a problem.  The next day I approached the U.S.

8   Attorney after having reviewed the file and stuff like that and

9   asked him to please, you know, to consider that one additional

10  point because we were ready to plead and we have reviewed the

11  facts and I had spoken to my client.

12          And so I'm asking the Court to -- given the state of the

13  case and the fact that, you know, there's really not that much

14  we can do about the severity of the crime and the fact that it

15  was punishable so high, please to at least grant that extra

16  point and sentence him to the bottom of the guidelines, which

17  would make him then on 63 months.  He's still looking at more

18  than five years in prison.

19          And his family is here.  His wife came from Houston, and he

20  asked me to relate to the Court that she would like to say

21  something to the Court.  Pretty much what she wanted to tell the

22  Court is that she's willing to give her papers up for permanent

23  residence.

24          THE COURT:  I'm sorry.  She's willing to do what?

25          MR. DIEZ:  She's willing to return back her lawful

10/05/2004 15:23 FAX 7137183302    US ATTY APPEALS                     042
Case 1:04-cr-00096 Document 10-2    Filed in TXSD on 10/05/2004    Page 19 of 29

5

1    residence, and she wants to go back to Mexico with her husband.

2    The kids are desperate for their father.  The youngest one,

3    which is five, has pretty much never met his father because

4    of -- he spent all this time in prison.  And that is why we are

5    asking the Court to consider that extra point.

6              THE COURT:  Let me ask you this:  Does he have any kind

7    of criminal revocation pending?

8              MR. DIEZ:  Yes, Your Honor.

9              THE COURT:  And what is the period of time that he is

10   facing in -- is there a warrant in reference -- is the state

11   moving to do something on the revocation?

12             MR. PONCE:  That is reflected in paragraph number 28.

13   He's looking at five years on that parole revocation.

14             THE COURT:  I guess -- you didn't mention it in your

15   argument although I read it in your motion.  So in other words

16   the Government delines to stick with the additional one point

17   downward departure for an early plea?

18             MR. DIEZ:  Yes, Your Honor.

19             THE COURT:  All right.  Mr. Ponce?

20             MR. PONCE:  Your Honor, we are opposed to that simply

21   because we did confirm that Mr. Rey Cantu, on at least two

22   occasions, did remind him that that extra point was available

23   only up to the time of arraignment, and he did represent that he

24   conveyed this to his client.  Subsequently, he filed a motion to

25   withdraw.  Apparently there was some kind of conflict dealing

1   with the case between he and his client, and that's when

2   Mr. Diez came into the picture. And that was, from my

3   understanding, several days later, about a week or so.

4          THE COURT: Okay. So was the conflict not in the nature

5   of his finding out that he -- the public defenders' office or

6   somebody -- he himself had represented a material witness?

7          MR. PONCE: No, Your Honor. It was just that he

8   couldn't get along with his client from what I understand.

9          THE COURT: All right. Mr. Diez, is that what you

10  confirm? Was it not in the nature of Mr. Cantu having to

11  withdraw because of representing somebody who would be a

12  material witness? It was only because your client and he did

13  not get along?

14         MR. DIEZ: I believe that's what happened, Your Honor.

15  I was appointed I think pretty much on that same day, the

16  arraignment. And I met with the U.S. Attorney and pretty

17  much -- right after I got the file and met with my client, which

18  was the next day or the day after. And at that time the offer

19  was not offered.

20         THE COURT: I find there is no basis for a motion for

21  downward departure, so the motion is denied. All right.

22         Sir, anything you wish to say to the Court before you're

23  sentenced?

24         THE DEFENDANT: I first want to ask you for your pardon

25  for having returned to the country and have compassion in my

10/05/2004 15:24 FAX 7137183302          US ATTY APPEALS                    ☑044
Case 29J4ov-0040I6PM Document 10-2     Filed in TXSD on 10/05/2004     Page 21 of 298

7

1    sentencing.  I ask for leniency.  And I promise you not to

2    return to this country, and I will take my family to Mexico.

3            THE COURT:  All right.  Then pursuant -- oh, I'm sorry.

4    Also, the guidelines -- or the presentence report has

5    recommended a sentence in the mid range.  Anything else on

6    behalf of probation?

7            THE PROBATION OFFICER:  Your Honor, Mr. Gonzales

8    recommended a middle range due to the fact that the defendant

9    committed the instant offense within two weeks after he was

10   released on parole -- or deported, and, secondary, his prior

11   criminal history.

12           THE COURT:  Mr. Diez?

13           MR. DIEZ:  Your Honor, just to please follow the plea

14   agreement that we have for the low end.  He is also looking at

15   the five years on the parole revocation.  He was coming to take

16   his family.  He didn't fully understood the impact of coming

17   back to the United States, that's why he reentered within the

18   two-week period.  He hadn't seen his family for a long time.

19   Now --

20           THE COURT:  Excuse me.  Where was he in custody?  Where

21   did he do time?

22           MR. DIEZ:  I'm not sure.

23           THE DEFENDANT:  Clemens unit, Cuero, Texas.

24           THE COURT:  Your family was able to go see you while

25   they were living in Houston?

1          THE DEFENDANT:  Sometimes once a month.  Sometimes.

2          THE COURT:  All right.  Then pursuant to the Sentencing

3  Reform Act of 1984, the Court hereby sentences you to a term of

4  imprisonment of 70 months.  Upon release from imprisonment, you

5  shall be placed on supervised release for a term of three years.

6  During this three-year period, you have to comply with all

7  standard and mandatory conditions of supervised release that

8  include that you are not to violate the law, state, federal or

9  local.

10          Sir, please understand that during this three-year period

11  after your release from prison, even if you are deported, you

12  have the obligation to comply with all standard and mandatory

13  and special conditions of supervised release.  That means that

14  should you commit another crime during this three-year period,

15  you may be brought back into court in connection with this case

16  and be ordered to serve more time than the 70 months that I'm

17  ordering today.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And if, for example, you are charged with

20  and are found guilty of the very same kind of crime that I found

21  you guilty of today, the sentence that you face in the future

22  may very well be greater than the 70 to 87 months you are facing

23  today.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And so, for example, if you were to be found

10/05/2004 15:25 FAX 7137183302          US_ATTY APPEALS                    @046
Case 4:04-cv-00095PM Document 10-2     Filed in TXSD on 10/05/2004    Page 23 of 29

                                                                              9

1   in this country illegally and be found guilty of this crime

2   again, and, for example, if you were to get a sentence of 87

3   months in that case, you may be brought back here in connection

4   with this case and be ordered to serve, let's say, another term

5   of imprisonment such as 24 months.  So that would be 24 months

6   plus the 87 months.  Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And those sentences may very well be run

9   consecutive to each other rather than concurrent.  Do you

10  understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And, again, if you return to this country,

13  the sentence which you face may very well be greater than the 70

14  to 87 months.  I believe I told you that.  The conditions shall

15  also include that you are not to illegally possess or illegally

16  consume a controlled substance, that you are not to possess a

17  firearm or other destructive device, and, again, you are not to

18  reenter the United States illegally.

19      Do you understand that your family circumstances, you know,

20  are not a reason for -- it's not a legal defense for you to come

21  back to this country, the fact that you wanted to see your

22  family.  It's a hard law, but it's a law you have to live with,

23  and your family unfortunately has to live with the consequences

24  of it as well.  The Court finds that you are indigent and are

25  unable to pay a fine, and, therefore, waives the imposition of a

10/05/2004 15:26 FAX 7137183302    US ATTY APPEALS    047
Case 4:04-cv-04058    Document 10-2    Filed in TXSD on 10/05/2004    Page 24 of 29

10

1    fine.  However, the Court does impose a special assessment of

2    $100 dollars, which the Court will order remitted should the

3    Government move to do so based upon your indigency.

4              MR. PONCE:  Move to remit, Your Honor.

5              THE COURT:  Motion's granted.  Sir, this sentence is in

6    conformance with the Sentencing Reform Act of 1984.  As

7    justification for the sentence, the Court adopts the findings in

8    the presentence report.  The law does provide that you have a

9    right to appeal your sentence, and you can do so even though

10   you're indigenct, but you must give notice of that intention

11   with ten days.  And if there's nothing further, we'll be in

12   recess.

13        Oh, by the way, let me just ask:  Was there -- the plea

14   agreement, did that include a waiver of appeal rights?

15              MR. PONCE:  I believe so, Your Honor, in paragraph nine.

16              MR. DIEZ:  Yes, Your Honor.

17              MR. PONCE:  Your Honor, in paragraph number nine, at the

18   top of page four, it says the waiver of rights.

19              THE COURT:  Mr. Cardenas, the plea agreement that you

20   entered into with the Government does include a term that you

21   are waiving your right to appeal.  And I just want to explain to

22   you -- I've said that you have a right to appeal, but because

23   you waived your right to appeal, you should know that there are

24   only three bases -- you have a limited right to appeal, and that

25   is going to be if the Court has assessed an illegal sentence;

10/05/2004 15:26 FAX 7137183302    US ATTY APPEALS    ☑048
Case 4:04cr-00593 Document 10-2    Filed in TXSD on 10/05/2004    Page 25 of 29

11

1   two, if there has been some kind of prosecutorial misconduct;

2   and, third, if there has been ineffective assistance of counsel.

3   So those are the only bases upon which you could appeal given

4   the fact that you have waived your right to appeal as part of

5   your plea agreement. And so I just want to make sure that you

6   understand that. Do you?

7       THE DEFENDANT: Yes, ma'am.

8       THE COURT: All right. We're in recess.

9       MR. DIEZ: May I address -- the wife wanted to say

10   something to you, but the Court said that was not needed or what

11   was --

12       THE COURT: Well, her giving up her resident alien, I

13   mean, that's not going to be a basis for -- I mean, I heard you.

14   I would assume that that's what she would testify to, but that's

15   still not a basis for granting the motion for downward

16   departure. Thank you.

17           * * *

18      (End of requested transcript.)

19          -oOo-

20   I certify that the foregoing is a correct transcript from

21   the record of proceedings in the above matter.

22

23   Date: September 14, 2004

24                 _Heather Hall_

25                Signature of Court Reporter

## AFFIDAVIT

BEFORE ME THE UNDERSIGNED AUTHORITY, APPEARED BEFORE ME, JAIME DIEZ, who after being duly sworn declare under penalty of perjury of the laws of the United States as follows:

My name is Jaime Diez and I am an attorney licensed in the State of Texas.

On March 19, 2003, Reynaldo S. Cantu, Assistant Federal Public Defendant filed a Motion to withdraw as attorney of record for Jose CARDENAS-Najera in which he indicated that he was withdrawing because there was a total breakdown in the attorney-client relationship between the Defendant and counsel. On March 19, 2003 the Court granted his motion and I was appointed by the Court to represent him.

On April 30, 2003 Mr. CARDENAS-Najera and I appeared before the U.S. Magistrate and pled guilty to a one count indictment for illegal re-entry following removal after having been convicted of an aggravated felony. A written plea agreement was signed. As part of the plea, the government agreed to recommend full credit for acceptance of responsibility and a sentence at the low end of the applicable sentencing guideline, which in his case could be a significant difference in months in prison. Previously, the government would give the Defendant an additional point if the Defendant pled guilty before arraignment. However, I was not appointed until after he was arraigned and therefore the AUSA would not give us that extra point as part of the plea. In addition I did inform Mr. CARDENAS-Najera that as part of the plea agreement he would be limiting his appeal rights to an illegal sentence, ineffective assistance of counsel and prosecutorial misconduct.



## AFFIDAVIT

BEFORE ME THE UNDERSIGNED AUTHORITY, APPEARED BEFORE ME, JAIME DIEZ, who after being duly sworn declare under penalty of perjury of the laws of the United States as follows:

My name is Jaime Diez and I am an attorney licensed in the State of Texas.

On March 19, 2003, Reynaldo S. Cantu, Assistant Federal Public Defendant filed a Motion to withdraw as attorney of record for Jose CARDENAS-Najera in which he indicated that he was withdrawing because there was a total breakdown in the attorney-client relationship between the Defendant and counsel. On March 19, 2003 the Court granted his motion and I was appointed by the Court to represent him.

On April 30, 2003 Mr. CARDENAS-Najera and I appeared before the U.S. Magistrate and pled guilty to a one count indictment for illegal re-entry following removal after having been convicted of an aggravated felony. A written plea agreement was signed. As part of the plea, the government agreed to recommend full credit for acceptance of responsibility and a sentence at the low end of the applicable sentencing guideline, which in his case could be a significant difference in months in prison. Previously, the government would give the Defendant an additional point if the Defendant pled guilty before arraignment. However, I was not appointed until after he was arraigned and therefore the AUSA would not give us that extra point as part of the plea. In addition I did inform Mr. CARDENAS-Najera that as part of the plea agreement he would be limiting his appeal rights to an illegal sentence, ineffective assistance of counsel and prosecutorial misconduct.



GOVERNMENT
EXHIBIT
C

Finally, I did not object to the sixteen level increase because he had two prior aggravated felony convictions that met the definition of a 16 level increase. In addition, I did not object nor appeal this increase or a sentence in excess to two years because there was no legal basis for an objection and/or appeal. Finally, Mr. CARDENAS-Najera did not instruct me to file an appeal.

FURTHER DECLARANT SAYETH NOT.

JAIME DIEZ
ATTORNEY AT LAW

SUBSCRIBED AND SWORN BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, ON THIS THE ___1st___ DAY OF _October_, 2004.

MARIBEL STURGEON
MY COMMISSION EXPIRES
March 24, 2007

## CERTIFICATE OF SERVICE

I, David H. Peck, Assistant United States Attorney, certify that a copy of this answer to Jose E. Cardenas-Najera's motion for relief under § 2255, and motion for summary judgment has been served by placing it in the United States mail, postage prepaid, on October 5, 2005, addressed to:

Jose E. Cardenas-Najera, pro se
Registration No. 23070-179
F.C.I. Beaumont
P.O. Box 26030
Beaumont, Texas 77720

David H. Peck
Assistant United States Attorney