IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 5 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOSE E. CARDENAS-NAJERA, | § | |
| Movant, | § | |
| | § | |
| v. | § | CRIMINAL NO. B-03-185 |
| | § | CIVIL ACTION NO. B-04-095 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**GOVERNMENT'S ANSWER TO SECTION 2255 MOTION,
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT, AND BRIEF**

The United States of America ("United States" or "Government"), by and

through the United States Attorney for the Southern District of Texas, hereby files

this Answer to Motion to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody, and Brief.  Jose E. Cardenas-Najera ("Cardenas" or "Petitioner")

alleges that his sentence exceeded the prescribed guideline range. He also claims his

trial counsel rendered ineffective assistance because he failed to appeal his sentence

and failed to appeal a sentence above the alleged statutory maximum of two years.

His claims of ineffective assistance of counsel are without merit.  Thus, this court

should dismiss Petitioner's action with prejudice.  Alternatively, Petitioner's claims

are unworthy of relief under 28 U.S.C. § 2255, so this court should grant summary

judgment in favor of the United States.

1.     **Jurisdiction**.  This court has jurisdiction under 28 U.S.C. § 2255.

2.    **Procedural history.**  A grand jury indicted Cardenas on March 11, 2003,

charging him with being unlawfully found in the United States after deportation,

having previously been convicted of an aggravated felony, in violation of 8 U.S.C.

§ 1326(a) and (b) (Crim. Doc. 1).  On April 30, 2003, Cardenas pleaded guilty to the

indictment with the benefit of a plea agreement before a United States magistrate

judge (Crim. Doc. 11, 12).

Under the terms of the plea agreement, Cardenas waived his right to appeal his

sentence, with the exception of a sentence imposed by the court above the statutory

maximum, or upon allegations of ineffective assistance of counsel or prosecutorial

misconduct (Crim. Doc. 12, ¶ 9).  Cardenas acknowledged and agreed that the district

court had jurisdiction and authority to impose any sentence within the statutory

maximum (Crim. Doc. 12, ¶ 8, 9).  Cardenas also was aware that any estimate of the

probable sentencing range that he may have received from his counsel, the United

States or the Probation Office was a prediction and not a promise and was not binding

on the United States, the Probation Office or this court (Crim. Doc. 12, ¶ 10).

Cardenas represented to the district court that he was satisfied that his attorney had

rendered effective assistance (Crim. Doc. 12, ¶ 13).   The district ordered the

preparation of a presentence report ("PSR") (Crim. Doc. 13).

The Probation Department calculated Cardenas' base offense level at 8 under

USSG § 2L1.2(a); applied a 16-level increase because he had been convicted of a

felony prior to deportation, under USSG § 2L1.2(b)(1)(A); and applied a 3-level reduction for timely acceptance of responsibility, under USSG § 3E1.1(a) & (b), for a total offense level of 21 (PSR, ¶¶ 12, 13, 17, 21). Based on a total offense level of 21 and a criminal history category of V, the guideline range of imprisonment was 70 to 87 months (PSR, ¶¶ 21, 32, 59). The Probation Department determined that Cardenas had been convicted of two felonies prior to deportation: a 1986 California conviction for drug trafficking (sale of a controlled substance) for which he received a sentence of three years' imprisonment and a 2000 Texas conviction for a crime of violence, namely robbery, for which he received a sentence of five years' imprisonment (PSR, ¶¶ 13, 25, 28). Both the government and defense counsel filed a statement of no objections to the PSR (Crim. Doc. 15, 17).

On July 28, 2003, the district court sentenced Cardenas to 70 months' confinement, to be followed by a three-year period of supervised release. No fine was imposed, and the $100 special assessment was abated on the government's motion (Crim. Doc. 22). The district court entered its judgment of conviction and sentence on August 13, 2003 (Crim. Doc. 24).

Cardenas did not appeal his sentence or conviction and the judgment became final on August 23, 2003, after the 10-day appeal expired. Rule 4(b)(1)(A) of the Fed. R. App. Proc. The instant motion to vacate sentence under 28 U.S.C. § 2255 (Civil

Doc. 1) was timely filed on June 14, 2004, and the United States was ordered to respond (Crim. Doc. 26).

3.    **Statement of facts.** Cardenas, a citizen and national of Mexico, was convicted in November, 1986 in California state court for the felony offense of sale of a controlled substance (crack cocaine). He was sentenced to three years in jail (PSR, p. 2, ¶¶ 25, 38). In February 2000, Cardenas was convicted in Texas state court of robbery. He was sentenced to five years' imprisonment (PSR, ¶ 28).

On February 17, 2003, United States Bureau of Immigration and Customs Enforcement agents encountered Cardenas in a sugar cane field near U.S. Highway 281 in Bluetown, Texas (PSR, ¶¶ 4, 5). He was searched and interviewed at the scene. He was determined to be a citizen and national of Mexico with no documentation to be in the United States. He was arrested along with three other undocumented aliens (PSR, ¶ 5).

A record check revealed that Cardenas had a prior 1986 California state conviction for drug trafficking and a 2000 Texas state conviction for robbery. On January 31, 2003, Cardenas was deported to Mexico through the Port of Entry in Laredo, Texas (PSR, ¶ 6). Cardenas did not have permission from the Attorney General to reapply for permission to return to the United States (PSR, ¶ 7).

4.    **Allegations.** The petitioner raises two main issues which he claims entitle him to the relief he seeks, that is (1) he should have only been enhanced for one prior

conviction, rather than two convictions, based on the age of his 1986 California offense for drug trafficking; and (2) his counsel rendered ineffective assistance (a) by failing to appeal his enhancement for the 1986 California drug trafficking conviction; (b) by failing to appeal his sentence above the alleged two-year statutory maximum for illegal re-entry; and (c) by failing to file a notice of appeal, despite being requested to do so. Cardenas did not attach an affidavit to his § 2255 motion in support of his unsworn claim that he requested his counsel to file a notice of appeal. Cardenas has chosen not to file a supporting brief or memorandum of law. He has chosen instead to stand on his cryptic, one-sentence, general descriptions of his grounds for relief. His points are not well articulated and are not supported by any facts in the record. He does not claim to be innocent of the count of conviction.

5.    **Transcripts.** The pleadings are on file with the court. The sentencing and rearraignment hearings have been transcribed. The plea transcript is attached hereto as Exhibit A and the sentencing transcript is attached hereto as Exhibit B.

6.    **Answer and motion to dismiss.**

    A. <u>Cardenas' guidelines misapplication claim is waived by his plea of guilty.</u>

    In his first point of error, Cardenas argues that he should have only been enhanced for one prior conviction, rather than two convictions, based on the age of his 1986 California offense for drug trafficking. Cardenas' argument is without merit and should be denied with prejudice.

-5-

**Cardenas waived his right to appeal his sentence** (Doc. 12, ¶¶ 9, 10). He does not claim his waiver of appeal was unknowing or involuntary. Cardenas' waived his right to appeal. *United States v. Melacon*, 972 F.2d 566, 567 (5th Cir. 1992); *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994).

By pleading guilty, Cardenas may not collaterally attack his guilty plea by raising a misapplication-of-the-guidelines claim. *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991); *United States v. Villarreal-Lara*, 913 F. Supp. 501, 504 (S.D. Texas 1995). In *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 765 (1989), the Supreme Court held that a defendant who has entered a plea of guilty to a criminal charge may not assert a double jeopardy claim in a collateral attack upon his sentence. The Court recognized two narrow exceptions to this rule (*i.e.*, voluntariness of the plea, and face of the indictment or record establishes convictions violate double jeopardy), neither of which apply here. *Id*. The Government is entitled to partial summary judgment on this issue because there is no dispute that Cardenas waived his right to appeal.

B. Cardenas has procedurally defaulted on his guidelines claim.

Cardenas did not appeal to the Fifth Circuit. Because he did not file a direct appeal, he procedurally defaulted. *See United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). "In general, '[i]t is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a

§ 2255 motion only if the petitioner can first demonstrate either (1) cause and prejudice, or (2) that he is actually innocent of the crime for which he was convicted.'" *Id.* (quoting *United States v. Sorrells*, 145 F.3d 744, 749 (5th Cir. 1998)); *see also Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604 (1998). After the Supreme Court's decision in *Bousley*, however, Cardenas cannot rely on a cause and prejudice argument to escape procedural default. *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Because Cardenas did not file a direct appeal, he must rely on the "actual innocence" prong of the standard to overcome a procedural default. *Id.*; *Torres*, 163 F.3d at 911. Thus, he must establish actual innocence in order to secure relief. *Jones*, 172 F.3d at 384.

Actual innocence means "factual innocence, and not mere legal insufficiency." *Id.* (quoting *Bousley*, 118 S. Ct. at 1611). To prove actual innocence, Cardenas "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 118 S. Ct. at 1611 (citations and quotations omitted). Cardenas does not allege in his § 2255 motion that he is innocent. He does not offer any facts that would show he is innocent. His § 2255 motion is premised upon his admission that he is guilty, and the district court erred by enhancing him 16 levels for his 1986 California conviction for drug trafficking. Cardenas has procedurally defaulted on his 16-level enhancement claim.

**C. Cardenas' claim that the guidelines were misapplied is not cognizable.**

Assuming, *arguendo*, that this court finds Cardenas may collaterally attack his guilty plea and voluntary waiver-of-appeal-attack, then his misapplication-of-the-guidelines claim fails because it is not cognizable under § 2255. In his first ground for relief, Cardenas complains that he should have only been enhanced for one prior conviction, rather than two convictions, based on the age of his 1986 California offense for drug trafficking.

Cardenas' claim that the sentencing guidelines were improperly applied is not cognizable under § 2255. *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (district court's ruling that defendant was not entitled to reduction for acceptance of responsibility is not cognizable in § 2255 motion). "'Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.'" *Id.* (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). Cardenas was sentenced within the guideline range and did not appeal his sentence. "'A district court's technical application of the Guidelines does not give rise to a constitutional issue.'" *Id.* at 1281-82 (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

**Cardenas'** claim does not pose any constitutional, statutory, or jurisdictional issue, nor does he assert that his sentence was in excess of the guideline maximum. A challenge to a guideline application is outside these parameters. *See United States v. Faubion*, 19 F.3d 226, 232-33 (5th Cir. 1994) (upward departure is not cognizable in a § 2255 proceeding). A challenge to a sentencing judge's technical application of the sentencing guidelines may not be raised in a § 2255 proceeding. *Id.* at 233 (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)); *see also Kennedy v. United States*, 863 F. Supp. 334, 338 (S.D. Miss. 1994) (defendant who did not challenge determination of his offense level on direct appeal was precluded from raising the issue in a collateral proceeding under § 2255). Cardenas' claim that the sentencing guidelines were misapplied is not cognizable under § 2255.

D. Cardenas' claim fails on the merits.

Lastly, Cardenas guidelines' application claim fails on the merits. Cardenas argues that his 1986 California conviction for drug trafficking was too old to count for purposes of applying the 16-level enhancement. The PSR applied a 16-level enhancement because Cardenas had a conviction for a drug trafficking offense with a sentence exceeding 13 months as well as a "crime of violence." The PSR identified two felonies to support the enhancement: the 1986 California conviction for drug trafficking and the 2000 Texas conviction for robbery (a "crime of violence") (PSR, ¶ 13). Either felony standing alone would have been sufficient to support the

enhancement. In other words, assuming the California conviction was too old to count, then the Texas conviction would suffice to impose the 16-level enhancement. Cardenas does not challenge the Texas conviction.

However, Cardenas' challenge fails as a matter of law. There is no time limit on using prior convictions for the 16-level enhancement. *United States v. Campbell*, 94 F.3d 125, 128 (4th Cir. 1996); *see also United States v. Gebele,* 117 F. Supp. 2d 540, 550 (W.D. Virginia 2000); USSG § 2L1.2, cmt. 2 (no time limit for aggravated felonies).

<u>Ineffective Assistance of Counsel</u>

In his second point of error, Cardenas claims his counsel rendered ineffective assistance (a) by failing to appeal his enhancement for the 1986 California drug trafficking conviction; (b) by failing to appeal his sentence above the alleged two-year statutory maximum for illegal re-entry; and (c) by failing to file a notice of appeal, despite being requested to do so. The issue of ineffective assistance of trial counsel are reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To succeed on such a claim, the defendant must first show that his counsel's performance fell below an objective standard of reasonableness. *Id*. at 688, 104 S. Ct. at 2065; *Prate v. Cain*,

-10-

142 F.3d 226, 230 (5ᵗʰ Cir. 1998). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance; and, "'[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'." *Id.* (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5ᵗʰ Cir. 1997)).

Constitutionally effective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight. The determination of whether counsel has rendered reasonably effective assistance turns in each case on the totality of facts in the entire record. Thus each case must be judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defenses. *Baldwin v. Maggio*, 704 F.2d 1325, (5ᵗʰ Cir.), *cert. denied*, 467 U.S. 1220, 104 S. Ct. 2667 (1984).

Second, petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test. This was rejected by the Supreme Court in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838 (1993). Prejudice under *Fretwell* requires the petitioner to show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Fretwell*, 506 U.S. at 368, 113 S. Ct. at 842 (quoting also *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574 (1986) ("the

essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect")). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 371, 113 S. Ct. at 844; *Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir. 1998); *Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1998). Not only must prejudice be alleged, but it must be affirmatively proven. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). If the defendant fails to establish prejudice, this court need not reach whether counsel's performance was deficient. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

A. <u>Failing to appeal the 16-level enhancement.</u>

In his second ground for relief, Cardenas claims his counsel was ineffective for failing to appeal the 16-level enhancement for his 1986 California drug trafficking conviction. As discussed above, Cardenas couldn't appeal this sentencing issue because he waived his right to appeal his sentence in the plea agreement (Crim. Doc. 12, ¶¶ 9, 10). An appeal would have been frivolous because there was no legal basis for it. There is no time restriction on the age of the prior conviction. In any event, disqualifying the California conviction would have been a Pyrrhic victory because the Texas robbery conviction would have been sufficient standing alone to support the

16-level enhancement.  Cardenas' counsel's performance was not deficient in any respect.

Cardenas' counsel Jaime Diez has provided a controverting affidavit, attached hereto as Exhibit C.  Attorney Diez did not object to or appeal the 16-level enhancement because Cardenas had two prior felony convictions that met the definition of the 16-level increase (Exh. C, p. 2).  Attorney Diez correctly surmised that an appeal was not only prohibited by the terms of the plea agreement, but also would have been an exercise in futility.  Attorney Diez's performance was exemplary.

Cardenas has not even alleged prejudice.  He cannot show prejudice because the 16-level enhancement would have been applied even without the California drug conviction based solely on the Texas robbery conviction.  Cardenas' second claim is without merit and partial summary judgment in favor of the Government should be granted.

    B. Failing to appeal the 16-level enhancement.

In his third ground for relief, Cardenas claims his counsel was ineffective for failing to appeal his sentence above the alleged two-year statutory maximum for illegal re-entry.  Cardenas argument is skeletal at best.  He apparently is arguing that his 70-month sentence imposed under 8 U.S.C. § 1326(b)(2) was unconstitutional because it exceeded the two-year statutory maximum sentence under 8 U.S.C. § 1326(a).  Cardenas was advised in his plea agreement and at the Rule 11 hearing that

the statutory maximum sentence was 20 years because he had been convicted of an aggravated felony prior to deportation (Crim. Doc. 12, ¶ 3; Crim. Doc. 25, p. 20-21).

Cardenas apparently argues that the "felony" and "aggravated felony" provisions found at 8 U.S.C. §§ 1326(b)(1) and (b)(2) are unconstitutional on their face. His claimed assignment of error has been resolved against him by the Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998). According to controlling Court precedent, subsection (b)(2) of § 1326 is a penalty provision rather than an element of the offense. The fact of the earlier aggravated felony conviction is sufficient to impose a 20-year statutory maximum sentence under § 1326(b)(2).

Attorney Diez did not appeal the increase in Cardenas' sentence above two years "because there was no legal basis for an objection and/or appeal" (Exh. C, p. 2). Attorney Diez correctly concluded that an appeal would have been meritless. Attorney Diez's performance was exemplary.

Cardenas has not even alleged prejudice. He cannot show prejudice because the Supreme Court in *Almendarez-Torres* has rejected his argument. Cardenas' third claim is without merit and partial summary judgment in favor of the Government should be granted.

## C. Failure to File Notice of Appeal

If, in fact, Cardenas made a <u>timely</u> request within the ten (10) day period following August 13, 2003, for Mr. Jaime Diez to pursue an appeal of his sentence, and Diez failed to file a timely notice of appeal, then the government would concede that Cardenas should be granted an out-of-time appeal, even where Cardenas waived his right to appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483-85, 120 S. Ct. 1029, 1038-39 (2000). Cardenas is entitled to counsel on his first appeal as a matter of right. *Rodriguez v. United States*, 395 U.S. 327, 89 S. Ct. 1715 (1969); *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830 (1985); *United States v. Guerra*, 94 F.3d 989 (5th Cir. 1996). Nor, if Cardenas timely instructed Mr. Diez to file a notice of appeal and Diez refused to do so, is there any need for Cardenas to show he was prejudiced. Prejudice will be irrefutably presumed. *Penson v. Ohio*, 488 U.S. 75, 109 S. 346 (1988); *White v. Johnson*, 180 F.3d 648, 655-56 (5th Cir. 1999); *Lombard v. Lynaugh*, 868 F.2d 1475 (5th Cir. 1989); *Roe v. Flores-Ortega*, 528 U.S. 470, 483-85, 120 S. Ct. 1029, 1038-39 (2000). Abandonment by counsel on appeal is *per se* a Sixth Amendment violation. *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).

Therefore, the question before this court is whether Cardenas timely requested his counsel Mr. Diez to pursue an appeal and whether the request was timely. Mr. Diez has submitted his sworn affidavit (Exh. C) in response to this § 2255 motion. Mr. Diez denies that Cardenas ever asked him to file an appeal (Exh, C, p. 2).

Cardenas has not sworn under penalties of perjury that he, in fact, requested that a notice of appeal be filed on his behalf. Before this Honorable Court permits Cardenas to pursue an out-of-time appeal, at a minimum he should be required to submit his statement under oath and subject to the penalties of perjury supporting his claim. If he fails to do so, his section 2255 motion should be dismissed and summary judgment entered for the government.

If Cardenas submits the proof of his claim under oath, then this Honorable Court should appoint counsel to represent him, if desired, and set the matter for a hearing to determine if, in fact, he timely requested that an appeal be filed.

7.    **Evidentiary Hearing.** Under Rule 8(a) pursuant to 28 U.S.C. foll. § 2255, this Court shall make such disposition of the motion as justice dictates. The allegations raised by Cardenas may properly be resolved on the basis of the record before this Court, which conclusively shows that no relief is appropriate. No evidentiary hearing is required. *United States v. Smith,* 915 F.2d 959, 964 (5th Cir.1990); *United States v. Santora,* 711 F.2d 41 (5th Cir. 1983).

8.    **Conclusion**.

A.    This Honorable Court should order petitioner to submit an affidavit under the penalties of perjury if he disputes the claim set out in the affidavit of Mr. Jaime Diez, Exhibit C. Petitioner should be required to state under oath (1) when he requested Diez to file a notice of appeal on his behalf; and (2) if the request was in

writing, he should be required to submit any documentation supporting the timely request.

B.    If Cardenas fails to submit his affidavit under oath controverting the affidavit of attorney Diez, this Honorable Court should then find the affidavit of Mr. Diez to be true and find there is no factual basis to support Cardenas' claim of ineffective assistance of counsel.

C.    In the event Cardenas responds to the Diez's affidavit with his controverting affidavit, this Honorable Court should appoint counsel, if requested by Cardenas, and set the matter for an evidentiary hearing to resolve the matter, Rule 8(c), Rules–Section 2255 Proceedings.

D.    In the event that an evidentiary hearing is necessary and the court rejects the statement of counsel that no timely request was made to file a notice of appeal, then the government concedes error and agrees that Cardenas should be permitted an out-of-time appeal.

E.    In the event that an evidentiary hearing is necessary and the court accepts and finds to be true the statement of counsel that no timely request was made to file a notice of appeal, then the government moves for summary judgment as Cardenas'

claim of ineffective assistance of counsel would be without any factual basis.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

David H. Peck
Assistant United States Attorney
910 Travis, Suite 1500
P. O. Box 61129
Houston, Texas 77208-1129
(713) 567-9369
S.D. TX. ID No. 6295
TX Bar Card No. 15701980

United States District Court
Southern District of Texas
FILED

SEP 1 8 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NO. CR-B-03-185 |
| | § | CASE NO. CR-B-03-337 |
| | § | CASE NO. CR-B-03-341 |
| | § | |
| VERSUS | § | BROWNSVILLE, TEXAS |
| | § | |
| JOSE ELMER CARDENAS NAJERA | § | |
| ROBERTO IRACHETA-GONZALEZ | § | APRIL 30, 2003 |
| JOSE FRANCISCO GARZA-RANGEL | · § | 10:52 A.M. TO 11:23 A.M. |

## REARRAIGNMENT

BEFORE THE HONORABLE JOHN WILLIAM BLACK
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:  .    SEE NEXT PAGE

FOR THE DEFENDANTS:      SEE NEXT PAGE

COURT CLERK:             LINDA GARCIA

COURT INTERPRETER:       KAREN PENA

COURT RECORDER:          REBECCA PINALES

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
Tel: 713-697-4718    Fax: 713-697-4722 .

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.



GOVERNMENT
EXHIBIT
A

APPEARANCES:

FOR THE PLAINTIFF:              U.S. ATTORNEY'S OFFICE
                                MR. DAN MARPOSON, AUSA
                                MR. OSCAR PONCE, AUSA
                                MR. JOE ESQUIVEL, AUSA
                                600 E. HARRISON, SUITE 201
                                BROWNSVILLE, TEXAS 78520


FOR DEFENDANT IRACHETA:         U.S. PUBLIC DEFENDER'S OFFICE
                                MR. JEFF WILDE, AFPD
                                600 E. HARRISON, SUITE 201
                                BROWNSVILLE, TEXAS 78520

FOR DEFENDANT CARDENAS:         MR. JOE DIEZ
                                ATTORNEY AT ALW
                                862 W. PRICE ROAD
                                BROWNSVILLE, TEXAS 78520

FOR DEFENDANT GARZA:            U.S. PUBLIC DEFENDER'S OFFICE
                                MR. CESAR AMADOR, AFPD
                                600 E. HARRISON, SUITE 201
                                BROWNSVILLE, TEXAS 78520

1    (Official Court Interpreter present)

2            THE COURT:  Okay, what do we have now?  We've got

3    B-03-185, *Jose Elmer Cardenas Najera.*

4            MR. PONCE:  Oscar Ponce for the Government. .

5            THE COURT:  B-03-337, *United States against Roberto*

6    *Iracheta-Gonzalez.*

7            MR. MARPOSON:  Dan Marposon for the Government, Your

8    Honor.

9            THE COURT:  B-03-341, *United States against Jose*

10    *Francisco Garza-Rangel.*

11            MR. ESQUIVEL:  Joe Esquivel for the Government, Your

12    Honor.

13            THE COURT:  B-03-348, the *United States against Jaime*

14    *Leija-Martinez.*

15            MR. MARPOSON:  Dan Marposon for the Government.

16            THE COURT:  Now, I'm going to ask the clerk to

17    administer an oath to all the defendants.

18        (The Defendants are sworn)

19            THE COURT:  .Is Mr. Diez here?  I thought I saw him a

20    moment ago.  Has he disappeared?

21            UNKNOWN MALE SPEAKER:  He was here this morning,

22    but --

23            MS. GARCIA:  I think he went to the men's room.

24            THE COURT:  All right.  Then let's wait a moment for

25    his return.  Let's see if I can embarrass him.  Hey, there he

1    is.

2                What I propose to do in these cases, is to take

3    each defendant individually through the arraignment portion of

4    the colloquy.    And then ask questions regarding waiver of

5    rights collectively and listening to individual responses. May

6    I ask if there are any objections to that procedure in B-03-

7    185, the *United States against Jose Elmer Cardenas Najera*?

8                MR. DIEZ:  No, Your Honor.

9                MR. PONCE:  None from the Government, Your Honor.

10                THE COURT:  In B-03-337, the *United States against*

11    *Roberto Iracheta-Gonzalez*?

12                MR. WILDE:  No objection, Your Honor.

13                MR. MARPOSON:  None from the Government.

14                THE COURT:  In B-03-341, the *United States against*

15    *Jose Francisco Garza-Rangel*?

16                MR. ESQUIVEL:  None from the Government, Your Honor.

17                MR. AMADOR:  No objections from the defense counsel.

18                THE COURT:  In B-03-348, the *United States against*

19    *Jaime Leija-Martinez*?.

20                MR. MARPOSON:  None from the Government, Your Honor.

21                THE COURT:  Is that your case, Mr. Wilde?

22                MR. WILDE:  I apologize, Your Honor.  No objections.

23                THE COURT:  All right.  All right.  B-03-185, the

24    *United States against Jose Elmer Cardenas Najera*.

25                MR. PONCE:  Your Honor, I'm -- I'm sorry.  I didn't

10/05/2004 15:10 FAX 7127163302  US ATTY APPEALS  Case 1:04-cv-71127163302 Document 11  Filed in TXSD on 10/05/2004  Page 23 of 40  @006

3

1   mean to interrupt, but on that case I believe there are plea

2   papers.  And --

3            THE COURT:  I'm sorry?

4            MR. PONCE:  I believe that there are plea papers in

5   that case and I believe the plea papers are -- only provide for

6   a one point credit for early plea at arraignment.  This is a

7   case that has not been invoked -- pled in earlier arraignment,

8   but subsequently thereafter.  And I needed to strike that line

9   and I need to discuss that with you.

10           MR. DIEZ:  Oh yea, but I mean, it's not a

11  rearraignment, so at least we know that.  I mean, you know,

12  it's not an arraignment right now.  They gave it to me like

13  that.  I would not expect to get the one point.  But, when you

14  want to discuss it, that's fine.

15           THE COURT:  Wait -- wait a minute.  Now, I'm --

16  You've lost me in all this -- What's the problem, Mr. Ponce?

17           MR. PONCE:  This case is a case that came in earlier,

18  I believe, last month.

19           THE COURT:  Okay.

20           MR. PONCE:  And what we've been doing is, in an

21  effort to try to move cases along for pleas, we offer one point

22  if they announce plea at arraignment.  Well, this individual

23  was arraigned back on -- last month on the 19th.

24           THE COURT:  Okay.

25           MR. PONCE:  And the paperwork was prepared back then,

10/05/2004 15:10 FAX 7137483302   US ATTY APPEALS                    ☐007
Case 4:04-cv-00998   Document 11   Filed in TXSD on 10/05/2004   Page 24 of 40

4

1   and counsel is having -- And that was not stricken from the

2   plea papers themselves.  And I just want to make sure the

3   record is clear of that.  Everything else stands in the plea

4   agreement but for the one point.

5            MR. DIEZ:  Your Honor, we tried to get this set for a

6   plea earlier.

7            THE COURT:  Wait a minute.  Wait a minute.  Come

8   here.

9            MR. DIEZ:  You don't need any argument.

10           THE COURT:  What's that?

11           MR. DIEZ:  You don't need me here.

12           THE COURT:  Yea, I want you too.  I want to talk to

13   you both.  I don't want to talk dirty behind your back.

14       (Bench conference off the record)

15           THE COURT:  All right.  Okay.  Mr. Jose Elmer

16   Cardenas Najera, is that your true name sir?

17           DEFENDANT NAJERA:  Yes.

18           THE COURT:  Do realize you're under oath?  That means

19   if you lie to me you can be prosecuted for perjury.

20           DEFENDANT NAJERA:  Yes.

21           THE COURT:  How old a man are you?

22           DEFENDANT NAJERA:  Thirty-six years old.

23           THE COURT:  How far did you go in school?

24           DEFENDANT NAJERA:  8th grade.

25           THE COURT:  Have you ever been in a mental

1  institution or has anybody ever suggested to you that you have

2  a mental illness?

3        DEFENDANT NAJERA:  No.

4        THE COURT:  Are you taking any drugs, medicine, or

5  anything else that would affect your ability to understand

6  what's happening here?

7        DEFENDANT NAJERA:  No.

8        THE COURT:  How do you feel right now?

9        DEFENDANT NAJERA:  Fine.

10        THE COURT:  You are here with Mr. Diez, who has been

11  appointed to represent you.  Have you had enough time to talk

12  to him about your case and are you satisfied with his services?

13        DEFENDANT NAJERA:  Yes.

14        THE COURT:  Mr. Diez, have you satisfied yourself

15  that your client is competent and understands the charges

16  against him and has he been able to assist in his defense?

17        MR. DIEZ:  Yes, Your Honor.

18        THE COURT:  Have you received a copy of the

19  indictment in your case, sir?

20        DEFENDANT NAJERA:  Yes.

21        THE COURT:  I'm going to ask the United States

22  attorney to read it to you.  Listen to it very carefully.

23        MR. PONCE:  *The United States of America versus Jose*

24  *Elmer Cardenas Najera*, Criminal No. B-03-185.  Indictment:  The

25  Grand Jury charges on or about February the 17th in the year

6

1  2003, in the Southern District of Texas, and within the

2  jurisdiction of the Court, the Defendant Jose Elmer Cardenas

3  Najera, an alien who had been previously denied admission,

4  excluded, deported and removed after having been convicted of

5  an aggravated felony, knowingly and unlawfully, was present in

6  the United States, having been found in Cameron County, Texas.

7  The said defendant having not obtained the consent of the

8  Attorney General of the United States for the reapplication by

9  defendant for admission into the United States; in violation of

10 Title 8 United States Code, Section 1326(a) and 1326(b).  A

11 True Bill signed by fourth person in the grand jury.

12              Mr. Cardenas Najera, did you understand the

13 indictment as read to you?

14              DEFENDANT NAJERA:  Yes.

15              MR. DIEZ:  To this indictment, sir, how do you plead,

16 guilty or not guilty?

17              DEFENDANT NAJERA:  Guilty.

18              THE COURT:  We'll come back here in a moment.

19              Now B-03-337, the *United States against Roberto*

20 *Iracheta-Gonzalez.*  Is that your true name, sir?

21              DEFENDANT IRACHETA:  Yes, sir.

22              THE COURT:  All right.  You realize you're under oath

23 and if you lie to me you can be prosecuted for perjury?

24              DEFENDANT IRACHETA:  Yes, sir.

25              THE COURT:  All right.  You speak English?

1          DEFENDANT IRACHETA:  Yes, sir.

2          THE COURT:  How far did you go in school?

3          DEFENDANT IRACHETA:  Tenth grade.

4          THE COURT:  How old a man are you?

5          DEFENDANT IRACHETA:  Twenty-nine.

6          THE COURT:  Where did you go to school?

7          DEFENDANT IRACHETA:  Omarhanna [sp.ph], Texas.

8          THE COURT:  Have you ever been in a mental

9 institution or has anybody ever suggested to you that you have

10 a mental illness?

11          DEFENDANT IRACHETA:  No, sir.

12          THE COURT:  Are you taking any drugs, or medicine, or

13 anything that would affect your ability to understand what's

14 happening?

15          DEFENDANT IRACHETA:  No, sir.

16          THE COURT:  How are you feeling right now?

17          DEFENDANT IRACHETA:  Just fine.

18          THE COURT:  You are here with Mr. Wilde, who's been

19 appointed to represent you for all purposes in your case.  Have

20 you had enough time to talk to him about your case and are you

21 satisfied with his representation?

22          DEFENDANT IRACHETA:  Yes, sir.

23          THE COURT:  Mr. Wilde, have you satisfied yourself

24 that your client is competent and understands that charges

25 against him and has he been able to assist in his defense?

8

1        MR. WILDE:  Yes, Your Honor.

2        THE COURT:  Have you received a copy of the

3 indictment in your case?

4        DEFENDANT IRACHETA:  Yes, sir.

5        THE COURT:  I'm going to ask the U.S. attorney to

6 read it to you.  Listen closely.

7        MR. PONCE:  The United States District Court,

8 Southern District of Texas, Brownsville Division, *United States*

9 *of America versus Roberto Iracheta-Gonzalez*, Criminal No. B-03-

10 337.  Indictment: The Grand Jury charges on or about April 8th,

11 2003, in the Southern District of Texas, and within the

12 jurisdiction of the Court, Defendant Roberto Iracheta-Gonzalez,

13 an alien who had previously been denied admission, excluded,

14 deported and removed after having been convicted of an

15 aggravated felony, knowingly and unlawfully was present in the

16 United States, having been found in Cameron County, Texas.  The

17 said defendant having not obtained consent to reapply for

18 admission into the United States with the Attorney General of

19 the United States and Secretary of Homeland Security, the

20 successor pursuant to Title 6 United States Code, Section 2023,

21 2024, and 557, in Violation of Title 8 United States Code,

22 Section 1326(a) and 1326(b).  A True Bill signed by the Foreman

23 of the Grand Jury.

24        Mr. Iracheta-Gonzalez, did you understand the

25 indictment as read to you?

10/05/2004 15:12 FAX 7137183302       US ATTY APPEALS       Case 1:04-cv-00385   Document 11   Filed in TXSD on 10/05/2004     Page 29 of 40   @012

9

1        DEFENDANT IRACHETA:  Yes, sir.

2        MR. PONCE:  How do you plea to the indictment, guilty

3   or not guilty?

4        DEFENDANT IRACHETA:  Guilty.

5        THE COURT:  All right.  We'll come back to you in a

6   moment.

7              Now, B-03-341, the *United States against Jose*

8   *Francisco Garza-Rangel*.  Is that your true name, sir?

9        DEFENDANT GARZA:  Yes.

10       THE COURT:  Do you realize that you're under oath and

11  if you lie to me you can be prosecuted for perjury?

12       DEFENDANT GARZA:  Yes.

13       THE COURT:  How old a man are you?

14       DEFENDANT GARZA:  Thirty-two years old.

15       THE COURT:  How far did you go in school?

16       DEFENDANT GARZA:  Sixth grade.

17       THE COURT:  Have you ever been in a mental

18  institution or has anybody ever suggested to you that you have

19  a mental illness?

20       DEFENDANT GARZA:  No.

21       THE COURT:  Are you taking any drugs, medicine, or

22  anything that would affect your ability to understand what's

23  happening, here?

24       DEFENDANT GARZA:  No.

25       THE COURT:  How do you feel right now?

10/05/2004 15:13 FAX 7137183308   US ATTY APPEALS   Case 1:04-cv-00068   Document 11   Filed in TXSD on 10/05/2004   Page 30 of 40   ☒013

10

1    DEFENDANT GARZA:  Fine.

2         THE COURT:  You are here with Mr. Amador, who's been

3    appointed to represent you for all purposes in your case.  Have

4    you had enough time to talk to him about your case and are you

5    satisfied with his services?

6         DEFENDANT GARZA:  Yes, sir.

7         THE COURT:  Mr. Amador, have you satisfied yourself

8    that your client is competent and understands the charges

9    against him and has he been able to assist in his defense?

10        MR. AMADOR:  Yes, Your Honor, I am.

11        THE COURT:  Have you received a copy of the

12   indictment in your case, sir?

13        DEFENDANT GARZA:  Yes, sir.

14        THE COURT:  I would ask the United States attorney to

15   read it to you.  Listen closely.

16        MR. ESQUIVEL:  The United States District Court,

17   Southern District of Texas, Brownsville Division, *United States*

18   *of America versus Jose Francisco Garza-Rangel*, Criminal No. B-

19   03-341.  Indictment:  The Grand Jury charges on or about April

20   the 2nd, 2003, in the Southern District of Texas, and within the

21   jurisdiction of the Court, Defendant Jose Francisco Garza-

22.  Rangel, an alien who had previously been denied admission,

23   excluded, deported and removed, knowingly and unlawfully, was

24   present in the United States, having been found in Cameron

25   County, Texas.  The said defendant having not obtained consent

10/05/2004 15:13 FAX 7127463302    US ATTY APPEALS    Case 1:04-cv-00146    Document 11    Filed in TXSD on 10/05/2004    Page 31 of 40    ☑014

11

1    to reapply for admission into the United States with the

2    Attorney General of the United States and Secretary of Homeland

3    Security, the successor pursuant to Title 6 United States Code,

4    Section 2023, 2024, and 557, in Violation of Title 8 United

5    States Code, Section 1326(a).  A True Bill by the Foreman of

6    the Grand Jury.

7                Mr. Garza-Rangel, did you understand the

8    indictment as read to you, sir?

9                DEFENDANT GARZA:  Yes, sir.

10               MR. ESQUIVEL:  How do you plead, guilty or not

11   guilty?

12               DEFENDANT GARZA:  Guilty.

13               THE COURT:  We'll get back to you in a moment.

14               B-03-348, the – *United States against Jaime*

15   *Leija Martinez*.  Is that your true name, sir?

16               DEFENDANT LEIJA:  Yes, sir.

17               THE COURT:  And do you realize you're under oath and

18   if you lie to me you can be prosecuted for perjury?

19               DEFENDANT LEIJA:  Yes, sir.

20               THE COURT:  How old a man are you?

21               DEFENDANT LEIJA:  Thirty-nine.

22               THE COURT:  How far did you go in school?

23               DEFENDANT LEIJA:  Seventh.

24               THE COURT:  Have you ever been in a mental

25   institution or has anybody ever suggested to you that you have

1   a mental illness?

2                DEFENDANT LEIJA:  No.

3                THE COURT:  Are you taking any drugs, or medicine, or

4   anything that would affect your ability to understand what's

5   happening here?

6                DEFENDANT LEIJA:  No.

7                THE COURT:  How do you feel right now?

8                DEFENDANT LEIJA:  Fine.

9                THE COURT:  You are here with Mr. Wilde, who's been

10  appointed to represent you for all purposes in your case.  Have

11  you had enough time to talk to him about your case and are you

12  satisfied with his representation?

13               DEFENDANT LEIJA:  Yes, sir.

14               THE COURT:  Mr. Wilde, have you satisfied yourself

15  that your client is competent and understands the charges

16  against him and has he been able to assist in his defense?

17               MR. WILDE:  Yes, Your Honor.

18               THE COURT:  Have you received a copy of the

19  indictment in your case, sir?

20               DEFENDANT LEIJA:  Yes, sir.

21               THE COURT:  I'm going to ask the United States

22  attorney to read it to you.  Listen carefully.

23               MR. MARPOSON:  The United States District Court,

24  Southern District of Texas, Brownsville Division, *United States*

25  *of America versus Jaime Leija-Martinez,* Criminal No. B-03-348.

Indictment:  The Grand Jury charges on or about April 10, 2003,
in the Southern District of Texas, and within the jurisdiction
of the Court, Defendant Jaime Leija-Martinez, an alien who had
previously been denied admission, excluded, deported and
removed after having been convicted of an aggravated felony,
knowingly and unlawfully, was present in the United States,
having been found in Cameron County, Texas.  The said defendant
not having obtained consent to reapply for admission into the
United States from the Attorney General of the United States or
Secretary of Homeland Security, the successor, pursuant to
Title 6 United States Code, Sections 2023, 2024, and 557, a
violation of Title 8 United States Code, Sections 1326(a) and
1326(b).  A True Bill signed by the Foreperson of the Grand
Jury.

            Mr. Leija-Martinez, did you understand the
indictment as read to you?

            DEFENDANT LEIJA:  Yes, sir.

            MR. MARPOSON:  How do you plea to the indictment,
guilty or not guilty?

            DEFENDANT LEIJA:  Guilty.

            THE COURT:  I want the record to reflect that in all
four of these cases, Judge Talge's order of referral was signed
this date, prior to this hearing.

            I'm going to ask all of you some more questions.
And I'm going to make some explanations to all of you.  It's

10/05/2004 15:14 FAX 7137183302    US ATTY APPEALS    Case 1:04-cv-00055    Document 11    Filed in TXSD on 10/05/2004    Page 34 of 40    @017

14

1    important that you understand both the questions and the

2    explanations.  So, if I say something you don't understand, or

3    if I ask a question you don't understand, I want you to tell

4    me.  And I will make it clear to you.

5              First, I need to explain to you that I am not

6    the judge who is going to be finding you guilty and I am not

7    the judge who is going to be sentencing you.  That's Judge

8    Tagle.  My role is to conduct this hearing.  And if I think

9    it's justified, to make a recommendation to her that she accept

10    your guilty pleas.  And all of you have signed forms like the

11    one I'm showing you now, by which you have consented to that

12    procedure.

13              Jose Elmer Cardenas Najera, did you understand

14    that, sir?

15              DEFENDANT NAJERA:  Yes.

16              THE COURT:  Roberto Iracheta-Gonzalez, did you

17    understand that, sir?

18              DEFENDANT IRACHETA:  Yes, sir.

19              THE COURT:  Jose Francisco Garza-Rangel, did you

20    understand that?

21              DEFENDANT GARZA:  Yes.

22              THE COURT:  And Jaime Leija-Martinez, did you

23    understand that?

24              DEFENDANT LEIJA:  Yes, sir.

25              THE COURT:  Under our system of laws and under the

10/05/2004 15:16 FAX 7137183303          US ATTY APPEALS                                                      ☐016
Case 1:04-cr-00508    Document 11    US Filed in TXSD on 10/05/2004    Page 35 of 40

15

1   Constitution of this country, all of you are entitled to trials

2   by jury on the charges the Government has made against you,

3   even if you think you are guilty.  At the trial, you would not

4   have to prove your innocence, because you're presumed innocent.

5   The Government would have to prove your guilt beyond a

6   reasonable doubt.

7                Do you understand that, Jose Elmer Cardenas

8   Najera?

9           DEFENDANT NAJERA:  Yes.

10          THE COURT:  Roberto Iracheta-Gonzalez?

11          DEFENDANT IRACHETA:  Yes, sir.

12          THE COURT:  Jose Francisco Garza-Rangel?

13          DEFENDANT GARZA:  Yes, sir.

14          THE COURT:  And Jaime Leija-Martinez, do you

15   understand that?

16          DEFENDANT LEIJA:  Yes.

17          THE COURT:  All right.  At that trial, the Government

18   would have to bring witnesses who would come and testify in

19   front of you.  Your lawyers would have the opportunity of

20   asking those witnesses questions, objecting to evidence offered

21   by the Government, and presenting any evidence that you wanted

22   to offer.

23                Do you understand that, Jose Elmer Cardenas

24   Najera?

25          DEFENDANT NAJERA:  Yes, sir.

1          THE COURT:  Roberto Iracheta-Gonzalez?

2          DEFENDANT IRACHETA:  Yes, sir.

3          THE COURT:  Jose Francisco Garza-Rangel?

4          DEFENDANT GARZA:  Yes.

5          THE COURT:  Jaime Leija-Martinez?

6          DEFENDANT LEIJA:  Yes, sir.

7          THE COURT:  You could testify if you want to, but you

8     have the right to remain silent.  So, you would not have to

9     testify.  If you decided you did not want to testify, the

10    United States attorney would not be able to stand up and tell

11    the jury you were guilty, or otherwise you would be telling

12    your own story.

13          Do you understand that, Jose Elmer Cardenas

14    Najera?

15          DEFENDANT NAJERA:  Yes, sir.

16          THE COURT:  Roberto Iracheta-Gonzalez?

17          DEFENDANT IRACHETA:  Yes, sir.

18          THE COURT:  Jose Francisco Garza-Rangel?

19          DEFENDANT GARZA:  Yes, sir.

20          THE COURT:  Jaime Leija-Martinez?

21          DEFENDANT LEIJA:  Yes, sir.

22          THE COURT:  Now, if you plead guilty and your plea is

23    accepted, there's not going to be a trial.  You're going to be

24    found guilty based on your plea and sentenced based on your

25    plea.

JUDICIAL TRANSCRIBERS OF TEXAS, INC.

1          Do you understand that, Jose Elmer Cardenas

2   Najera?

3          DEFENDANT NAJERA:  Yes, sir.

4          THE COURT:  Roberto Iracheta-Gonzalez?

5          DEFENDANT IRACHETA:  Yes, sir.

6          THE COURT:  Jose Francisco Garza-Rangel?

7          DEFENDANT GARZA:  Yes.

8          THE COURT:  Jaime Leija-Martinez?

9          DEFENDANT LEIJA:  Yes, sir.

10          THE COURT:  You will also have to give up your right

11   to remain silent, because I need to be satisfied from what you

12   tell me that you are in fact guilty.

13          Do you understand that, Jose Elmer Cardenas

14   Najera?

15          DEFENDANT NAJERA:  Yes, sir.

16          THE COURT:  Roberto Iracheta-Gonzalez?

17          DEFENDANT IRACHETA:  Yes, sir.

18          THE COURT:  Jose Francisco Garza-Rangel?

19          DEFENDANT GARZA:  Yes, sir.

20          THE COURT:  Jaime Leija-Martinez?

21          DEFENDANT LEIJA:  Yes, sir.

22          THE COURT:  All right.  Jose Elmer Cardenas Najera,

23   do you have any questions you want to ask me about anything

24   I've said to you so far?

25.          DEFENDANT NAJERA:  Well, I would ask you only that

1    you have some consideration in my case and me.  And all of my

2    children are citizens and live here and that's the reason why I

3    came back.

4              THE COURT:  Well, I understand that.  But the -- what

5    I'm asking you now -- And that's a matter for you take up with

6    Judge Tagle and Mr. Diez will explain that to you.  But for

7    right now, what I'm asking you is this, have you understood all

8    of the questions that I've asked you and the explanations that

9    I've made to you about your rights?

10             DEFENDANT NAJERA:  Yes, sir.

11             THE COURT:  Do you have any questions about those

12   rights?

13             DEFENDANT NAJERA:  No, none.

14             THE COURT:  Understanding what I've told you, do you

15   still want to plead guilty?

16             DEFENDANT NAJERA:  Yes.

17             THE COURT:  All right.  Roberto Iracheta-Gonzalez, do

18   you have any questions about anything I've said to you?

19             DEFENDANT IRACHETA:  No, sir.

20             THE COURT:  Do you still want to plead guilty?

21             DEFENDANT IRACHETA:  Yes, sir.

22             THE COURT:  Jose Francisco Garza-Rangel, do you have

23   any questions?

24             DEFENDANT GARZA:  No, sir.

25             THE COURT:  Do you still want to plead guilty?

19

1    DEFENDANT GARZA:  Yes, sir.

2    THE COURT:  Jaime Leija-Martinez, do you have any

3    questions?

4    DEFENDANT LEIJA:  No, sir.

5    THE COURT:  Do you still want to plead guilty?

6    DEFENDANT LEIJA:  Yes, sir.

7    THE COURT:  Now, in your cases, Jose Elmer Cardenas

8    Najera, Roberto Iracheta-Gonzalez, and Jaime Leija-Martinez,

9    the Government says in each of your cases that you broke the

10   law by returning to this country illegally after you have been

11   deported.  And the reason that you had been deported you had

12   committed an aggravated felony.

13            Do you understand that, Jose Elmer Cardenas

14   Najera?

15   DEFENDANT NAJERA:  Yes, sir.

16   THE COURT:  Do you have any questions about those

17   charges?

18   DEFENDANT NAJERA:  No, sir.

19   THE COURT:  Roberto Iracheta-Gonzalez, do you

20   understand that, sir?

21   DEFENDANT IRACHETA:  Yes, sir.

22   THE COURT:  And do you have any questions about those

23   charges?

24   DEFENDANT IRACHETA:  No, sir.

25   THE COURT:  Jaime Leija-Martinez, do you understand

JUDICIAL TRANSCRIBERS OF TEXAS, INC.

20

1   that, sir?

2          DEFENDANT LEIJA:  Yes.

3          THE COURT:  And do have any questions about those

4   charges?

5          DEFENDANT LEIJA:  No, sir.

6          THE COURT:  Now, all the three of you need to

7   understand that the maximum penalty for that offense is 20

8   years confinement, $250,000 fine, a three-year supervised

9   release term, and a $100 special assessment.

10         Do you understand that, Jose Elmer Cardenas

11  Najera?

12         DEFENDANT NAJERA:  Yes, sir.

13         THE COURT:  Roberto Iracheta-Gonzalez?

14         DEFENDANT IRACHETA:  Yes, sir.

15         THE COURT:  And Jaime Leija-Martinez?

16         DEFENDANT LEIJA:  Yes, sir.

17         THE COURT:  Do you understand that a supervised

18  release term means that if you violate any of the conditions of

19  that while you are out on such a term, you can be put back in

20  prison to do time consecutive to what you've done, and you

21  wouldn't get credit for the time you were out.

22         Do you understand that, Jose Elmer Cardenas

23  Najera?

24         DEFENDANT NAJERA:  Yes, sir.

25         THE COURT:  Roberto Iracheta-Gonzalez?