1            DEFENDANT IRACHETA:  Yes.

2            THE COURT:  Jaime Leija-Martinez?

3            DEFENDANT LEIJA:  Yes, sir.

4            THE COURT:  Do you also understand that at the

5    conclusion of any term of imprisonment you receive you'll be

6    deported.

7                 Do you understand that, Jose Elmer Cardenas

8    Najera?

9            DEFENDANT NAJERA:  Yes, sir.

10           THE COURT:  Roberto Iracheta-Gonzalez?

11           DEFENDANT IRACHETA:  Yes, sir.

12           THE COURT:  Jaime Leija-Martinez?

13           DEFENDANT LEIJA:  Yes, sir.

14           THE COURT:  Understanding all those things, do you

15   want to plead guilty, Jose Elmer Cardenas Najera?

16           DEFENDANT NAJERA:  Yes, sir.

17           THE COURT:  Roberto Iracheta-Gonzalez?

18           DEFENDANT IRACHETA:  Yes, sir.

19           THE COURT:  Jaime Leija-Martinez?

20           DEFENDANT LEIJA:  Yes, sir.

21           THE COURT:  All right.  Now, in your case, Jose

22   Francisco Garza-Rangel, the Government says that you've broke

23   the law by returning to this country illegally after you were

24   deported.  Do you understand that?

25           DEFENDANT GARZA:  Yes, sir.

10/05/2004 15:17 FAX 7137183302    US ATTY APPEALS                                    ⓩ025
Case 1:04-cv-00099   Document 11-2   Filed in TXSD on 10/05/2004    Page 2 of 25

22

1        THE COURT:  Do you have any questions about those

2   charges?

3        DEFENDANT GARZA:  No, sir.

4        THE COURT:  Do you understand the maximum penalty for

5   that offense is two years confinement, $250,000 fine, and a

6   one-year supervised release term, and a $100 special

7   assessment?

8        DEFENDANT GARZA:  Yes.

9        THE COURT:  And do you understand that a supervised

10  release term means that if you are on such a term and you

11  violate any of the conditions of it, you would be put back in

12  prison to do time consecutive to what you had all ready done

13  without credit for the time you were out?

14        DEFENDANT GARZA:  Yes, sir.

15        THE COURT:  And do you understand that at the

16  conclusion of any term of imprisonment you receive you'll be

17  deported?

18        DEFENDANT GARZA:  Yes, sir.

19        THE COURT:  Understanding all those things, do you

20  still want to plead guilty?

21        DEFENDANT GARZA:  Yes, sir.

22        THE COURT:  Has anybody threatened or forced any of

23  you to plead guilty when you didn't want to?

24        Jose Elmer Cardenas Najera?

25        DEFENDANT NAJERA:  No.

JUDICIAL TRANSCRIBERS OF TEXAS, INC.

1          THE COURT: Roberto Iracheta-Gonzalez?

2          DEFENDANT IRACHETA: No, sir.

3          THE COURT: Jose Francisco Garza-Rangel?

4          DEFENDANT GARZA: No, sir.

5          THE COURT: Jaime Leija-Martinez?

6          DEFENDANT LEIJA: No, sir.

7          THE COURT: Now, in your case Jose Elmer Cardenas

8 Najera, I understand that there's an agreement between you and

9 the Government. I'm going to ask the United States attorney to

10 describe it. Listen carefully.

11          MR. PONCE: The Government, in return for a plea of

12 guilty to the indictment and a waiver of appeal rights as

13 indicated on the plea papers, the Government will recommend low

14 end of the guidelines for acceptance of responsibility.

15          THE COURT: Is that you understanding of the

16 agreement?

17          DEFENDANT NAJERA: Yes, sir.

18          THE COURT: Other than that, has anybody made you any

19 promises to plea -- to have you plead guilty?

20          DEFENDANT NAJERA: No.

21          THE COURT: All right. And in your case, Roberto

22 Iracheta-Gonzalez, I also understand that there's an agreement.

23 I'm going to ask the U.S. attorney to describe it. Listen

24 carefully, sir.

25          MR. MARPOSON: Your Honor, in exchange for the

24

1  defendant's plea of guilty to the indictment and waiver of

2  appeal rights as outlined in the plea agreement, the Government

3  will recommend that he receive full credit for acceptance of

4  responsibility, be sentenced at the bottom of the guideline

5  level to which he scores, and receive one additional point

6  downward departure for acceptance.

7           THE COURT:  Is that your understanding of the

8  agreement, Roberto Iracheta-Gonzalez?

9           DEFENDANT IRACHETA:  Yes, sir.

10          THE COURT:  Any other promises other than that?

11          DEFENDANT IRACHETA:  No, sir.

12          THE COURT:  And in your case, Jose Francisco Garza-

13 Rangel, has anybody made you any promises to get you to plead

14 guilty?

15          DEFENDANT GARZA:  No, sir.

16          THE COURT:  Okay.  Then, Jaime Leija-Martinez, I

17 understand there's an agreement between you and the Government.

18 I'm going to ask the U.S. attorney to describe it.  Listen

19 closely.

20          MR. MARPOSON:  Your Honor, in exchange for the

21 defendant's plea of guilty to the indictment and waiver of

22 appeal rights as outlined in the plea agreement, the Government

23 will recommend that he receive full credit for acceptance of

24 responsibility, be sentenced at the bottom of the guideline

25 level for which he scores, and receive one additional point

1   downward departure for entering a guilty plea.

2               THE COURT:  Is that your understanding of the

3   agreement, Mr. Jaime Leija-Martinez?

4               DEFENDANT LEIJA:  Yes.

5               THE COURT:  Any other promises other than that?

6               DEFENDANT LEIJA:  No.

7               THE COURT:  All of you need to understand that Judge

8   Talge will not be able to determine the guideline range for

9   your sentences until after the preparation of a presentence

10  investigation.  That's a report prepared by the probation

11  department, which looks into your backgrounds and the

12  backgrounds of these offense.  You will have the opportunity of

13  reviewing those reports and making objections to them.

14               Do you understand that, Jose Elmer Cardenas

15  Najera?

16               DEFENDANT NAJERA:  Yes, sir.

17               THE COURT:  Roberto Iracheta-Gonzalez?

18               DEFENDANT IRACHETA:  Yes, sir.

19               THE COURT:  Jose Francisco Garza-Rangel?

20               DEFENDANT GARZA:  Yes, sir.

21               THE COURT:  Jaime Leija-Martinez?

22               DEFENDANT LEIJA:  Yes, sir.

23               THE COURT:  Do all of you understand that under

24  certain circumstances, Judge Talge could sentence you to a term

25  more or less severe than that called for by the guidelines?

1              Jose Elmer Cardenas Najera?

2              DEFENDANT NAJERA:  Yes, sir.

3              THE COURT:  Roberto Iracheta-Gonzalez?

4              DEFENDANT IRACHETA:  Yes, sir.

5              THE COURT:  Jose Francisco Garza-Rangel?

6              DEFENDANT GARZA:  Yes, sir.

7              THE COURT:  Jaime Leija-Martinez?

8              DEFENDANT LEIJA:  Yes, sir.

9              THE COURT:  Now, in your case, Jose Francisco Garza-

10   Rangel, you have the right to appeal your case at no charge to

11   yourself to a higher court.  Do you understand that?

12             DEFENDANT GARZA:  Yes, sir.

13             THE COURT:  The rest of you, under the terms of your

14   plea agreement, have surrendered certain appeal rights.  You

15   could, however, appeal at not cost to yourselves to a higher

16   court if you were -- from an illegal sentence or because you

17   were dissatisfied with your attorneys.

18             Do you understand that, Jose Elmer Cardenas

19   Najera?

20·            DEFENDANT NAJERA:  Yes, sir.

21             THE COURT:  Roberto Iracheta-Gonzalez?

22             DEFENDANT IRACHETA:  Yes, sir.

23             THE COURT:  Jaime Leija-Martinez?

24             DEFENDANT LEIJA:  Yes, sir.

25             THE COURT:  Do all of you understand that there's no

10/05/2004 15:19 FAX 7037453302   US ATTY-APPEALS                                    ☒030
10/05/2004 Case 1:90-cv-00730 Document 1-2   Filed in TXSD on 10/05/2004   Page 7 of 25

27

1   parole in this country?  So if you are sentenced to do time,

2   you will not be released early on parole.

3                   Do you understand that, Jose Elmer Cardenas

4   Najera?

5               DEFENDANT NAJERA:  Yes, sir.

6               THE COURT:  Roberto Iracheta-Gonzalez?

7               DEFENDANT IRACHETA:  Yes, sir.

8               THE COURT:  Jose Francisco Garza-Rangel?

9               DEFENDANT GARZA:  Yes, sir.

10              THE COURT:  Jaime Leija-Martinez?

11              DEFENDANT LEIJA:  Yes, sir.

12              THE COURT:  Do all of you understand that in the

13  event your lawyers and the Government lawyers were to make a

14  recommendation to Judge Talge about a certain sentence, and she

15  didn't' follow that recommendation, you would not be able to

16  withdraw your guilty pleas.

17                  Do you understand that, Jose Elmer Cardenas

18  Najera?

19              DEFENDANT NAJERA:  Yes, sir.

20              THE COURT:  Roberto Iracheta-Gonzalez?

21              DEFENDANT IRACHETA:  Yes, sir.

22              THE COURT:  Jose Francisco Garza-Rangel?

23              DEFENDANT GARZA:  Yes, sir.

24              THE COURT:  Jaime Leija-Martinez?

25              DEFENDANT LEIJA:  Yes, sir.

1    THE COURT: Has anybody promised any of you a certain

2 sentence to plead guilty? Now, I'm not asking about

3 discussions you've had with your lawyers about what might

4 happen. I'm sure you've had those. What I want to know

5 though, has anybody actually made you a promise of a sentence

6 to get you to plead guilty?

7    Jose Elmer Cardenas Najera?

8    DEFENDANT NAJERA: No, sir.

9    THE COURT: Roberto Iracheta-Gonzalez?

10    DEFENDANT IRACHETA: No.

11    THE COURT: Jose Francisco Garza-Rangel?

12    DEFENDANT GARZA: No, sir.

13    THE COURT: Jaime Leija-Martinez?

14    DEFENDANT LEIJA: No, sir.

15    THE COURT: Now in your case Jose Elmer Cardenas

16 Najera, I'm going to ask the United States attorney to tell me

17 the facts. And I want you to listen very carefully to what he

18 says.

19    MR. PONCE: On February the 17th, of the year 2003,

20 the defendant, Jose Elmer Cardenas Najera, was found west of

21 Los Indios, Cameron County, Texas by border patrol agents

22 conducting checks for aliens. Through investigation and

23 questioning, it was determined that he was a citizen of Mexico

24 who had entered the United States illegally. Furthermore, that

25 he had been previously deported, excluded or removed from the

1  United States in January of 2003, after having been convicted

2  of the aggravated felony of robbery in 1999. He did not have

3  the consent of the Attorney General for reapplication for

4  admission into the United States when found.

5        THE COURT: Is that -- is that what happened, Jose

6  Elmer Cardenas Najera?

7        DEFENDANT NAJERA: Yes.

8        THE COURT: Well, I'm going to recommend to Judge

9  Talge that she accept your guilty plea.

10       MR. PONCE: Your Honor, on -- on the fax, I think

11  there was a typo. It says in 1996 when it's January of 2003.

12  It's a typo, sorry. I read it correctly.

13       THE COURT: Well, all right. That's on the fax

14  somewhere, what you're saying?

15       MR. PONCE: Yes, sir.

16       THE COURT: I'll ask you to fix that after we adjourn

17  here.

18         All right, in your case Roberto Iracheta-

19  Gonzalez, I'm going to ask the United States attorney to tell

20  me the facts. So listen closely, sir.

21       MR. MARPOSON: Your Honor, on April 18, 2003, the

22  defendant, Roberto Iracheta-Gonzalez was found in Brownsville,

23  Cameron County, Texas by border patrol agents conducting checks

24  for aliens. During the investigation and questioning, it was

25  determined that he was a citizen of Mexico who had entered the

1   United States illegally.  Furthermore, that he had been

2   previously deported, excluded and removed from the United

3   States on January 12th, 1999, after having been convicted of the

4   aggravated felony of possession of marijuana in 1997.  The

5   defendant had not applied to the Attorney General or the

6   Secretary of Homeland Security for permission to reenter the

7   United States.

8           THE COURT:  Is that what happened Roberto Iracheta-

9   Gonzalez?

10          DEFENDANT IRACHETA: Yes, sir.

11          THE COURT:  All right.  I'm going to recommend to

12  Judge Talge that she accept your plea also.

13              Now, in the case of Jose Francisco Garza-Rangel,

14  I'm going to ask the United States attorney to tell me the

15  facts of your case, sir.  Listen closely.

16          MR. ESQUIVEL:  Your Honor, the facts will show that

17  on April 2nd of 2003, the defendant, Jose Francisco Garza-Rangel

18  was found in Brownsville, Cameron County, Texas, by border

19  patrol agents conducting checks for aliens in the Cameron   .

20  County jail.  During the investigation and questioning, it was

21  determined that he was a citizen of Mexico that had entered the

22  United States illegally.  Furthermore, that he has previously

23  been deported, excluded or removed from the United States on

24  May 2nd, 2002.  The defendant had not applied with nor received

25  consent of the Attorney General or the Secretary of Homeland

1   Security for permission to reenter the United States.

2           THE COURT:  Is that what happened Jose Francisco

3   Garza-Rangel?

4           DEFENDANT GARZA: Yes, sir.

5           THE COURT:  I'm going to recommend to Judge Talge

6   that she accept your plea also.

7           In B-03-348, Jaime Leija-Martinez, I'm going to

8   ask the United States attorney to tell me the facts.  Listen

9   carefully, sir.

10          MR. MARPOSON:  Your Honor, the defendant, an alien, a

11  non-citizen of the United States, was found in Cameron County,

12  Texas, on April 2, 2003, after having been deported on June 1,

13  2000 through Hidalgo, Texas.  The defendant was convicted of

14  the aggravated felony of possession of heroin on June 26th,

15  1998.  The defendant has not obtained consent to apply for

16  admission into the United States from the Attorney General or

17  the United States or Secretary of Homeland Security.

18          THE COURT:  Is that what happened, Jaime Leija-

19  Martinez?

20          DEFENDANT LEIJA: Yes, sir.

21          THE COURT:  I'm going to recommend to Judge Talge she

22  accept your plea.

23          I have signed orders in all of your cases

24  directing the Probation Department to prepare presentence

25  investigations by June the 12th.  As I said, you will have the

1   opportunity of reviewing those and objecting to them, which

2   must be done by June 26th. The final report must be submitted

3   by July 10th, and you will be sentenced by Judge Talge on July

4   28th.

5           Let me ask the attorneys in B-03-185, the *United*

6   *States against Jose Elmer Cardenas Najera*, if they feel that

7   I've complied with Rule 11 and are there questions that I

8   should ask and have not?

9           MR. PONCE: Yes, sir, we feel that you have and we

10  have no further questions.

11          MR. DIEZ: Yes, Your Honor, we no questions.

12          THE COURT: In B-03-337, the *United States against*

13  *Roberto Iracheta-Gonzalez*, have I complied with Rule 11 and are

14  there any questions that I should ask that I have not?

15          MR. MARPOSON: The Government feels that you have

16  complied, Your Honor, and has no further questions.

17          MR. WILDE: Same announcement, Your Honor.

18          THE COURT: In B-03-341, the *United States against*

19  *Jose Francisco Garza-Rangel*, have I complied with Rule 11 and

20  are there any questions that I should ask that I have not?

21          MR. ESQUIVEL: The Government feels that you have

22  complied and we have no questions, Your Honor.

23          MR. AMADOR: Same announcement from the defense, Your

24  Honor.

25          THE COURT: B-03-348, the *United States against Jaime*

10/05/2004 15:21 FAX 7137183302    US ATTY APPEALS    @036
Case 1:04-cv-00095    Document 11-2    Filed in TXSD on 10/05/2004    Page 13 of 25

33

1  *Leija-Martinez*, have I complied with Rule 11 and are there any

2  questions that I should ask that I have not?

3         MR. MARPOSON:  The Government feels that you have

4  complied with Rule 11, Your Honor and we have no further

5  questions, Your Honor.

6         MR. WILDE:  Same announcement, Your Honor.

7         THE COURT:  All right, if there is nothing else, we

8  are being recessed then.  Thank you.

9        (These proceedings concluded at 11:23 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                *  *  *  *  *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct
transcript from the electronic sound
recording of the proceedings in
the above-entitled matter.


_Dana Gerard / JS_
Signature of Transcriber

_09/11/03_
Date

_22262_
JTT#

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

BROWNSVILLE DIVISION

SEP 1 4 2004

Michael N. Milby
Clerk of Court

UNITED STATES OF AMERICA )
) CRIMINAL ACTION NO.
VS. ) B-03-185
)
JOSE ELMER CARDENAS NAJERA )
)

SENTENCING
BEFORE THE HONORABLE HILDA G. TAGLE
JULY 28, 2003

APPEARANCES:

For the Government:      MR. OSCAR PONCE
                         Assistant United States Attorney
                         600 East Harrison, Suite 201
                         Brownsville, Texas  78520

For the Defendant:       MR. JAIME DIEZ
                         Jones & Crane
                         862 West Price Road
                         Brownsville, Texas  78520

Transcribed by:          HEATHER HALL
                         Official Court Reporter
                         600 E. Harrison, Box 16
                         Brownsville, Texas  78520
                         (956)548-2510

Proceedings recorded by mechanical stenography, transcript produced by computer.



GOVERNMENT EXHIBIT
B

ORIGINAL

10/05/2004 15:22 FAI 5137183302     US ATTY APPEALS                    Ø039
Case 1:03-cr-00185   Document 11-2   Filed in TXSD on 10/05/2004   Page 16 of 25
SEP 29 '04  04:46PM USO                                                    P.3

2

```
 1              THE COURT:  Let me call 03-CR-185, the United States of
 2      America versus Jose Elmer Cardenas Najera.  What says the
 3      Government?
 4              MR. PONCE:  Oscar Ponce for the Government.  Ready.
 5              THE COURT:  All right.  What says the defendant?
 6              MR. DIEZ:  Jaime Diez for the defendant.  Present and
 7      ready.
 8          (The Court heard other matters.)
 9              THE COURT:  All right.  03-CR-185, the United States of
10      America versus Jose Elmer Cardenas Najera.  Mr. Diez, have
11      you -- first of all, is there an objection to the report and
12      recommendation of the magistrate judge?
13.             MR. PONCE:  No objections.
14              MR. DIEZ:  No, Your Honor.
15              THE COURT:  Then the report is approved and is adopted
16      by the Court, and the defendant's plea of guilty is accepted.
17      And based upon the evidence in the record at re-arraignment, the
18      Court finds that the defendant, Jose Elmer Cardenas Najera, is
19      guilty of the offense of being an alien unlawfully found in the
20      United States after deportation having previously been convicted
21      of an aggravated felony as alleged in this indictment.  The
22      Court, having found the defendant guilty, will proceed with
23      sentencing.  There being a plea agreement, is there anything
24      else on behalf of the Government in connection with this plea
25      agreement?
```

10/05/2004 15:33 FAX 71371833302    US ATTY APPEALS    ⧄040
SEP 29 '04  04:46PM USO    Document 11-2    Filed in TXSD on 10/05/2004    Page 17 of 25    P.4

3

1              MR. PONCE:  Nothing else, Your Honor.

2              THE COURT:  All right.  Mr. Diez, you have reviewed this

3    presentence report with your client?

4              MR. DIEZ:  Yes, Your Honor, I have.

5              THE COURT:  And there is a motion for downward

6    departure, so you may address the Court.

7              MR. DIEZ:  Yes, Your Honor.  The defendant is 37 years

8    old.  He's from Mexico.  He has pretty much spent all his life

9    in the United States.  He came here when he was 17 years old.

10   That was 20 years ago.  All his family lives in Houston.  The

11   defendant was convicted back in 1999 for robbery, and that's

12   where he was serving time.  While he was serving time, he was

13   deported from the United States.

14        He has three children ages 12 -- 11, 8 and 5.  He submitted

15   letters from his spouse pretty much asking the Court to consider

16   leniency in this case as pretty much he will not be able to be

17   with his children now because of the prior incident and this

18   incident where he was not fully understanding the remedy of

19   having reentered back in the United States.  He was coming back

20   here to be back with his family.  His family really wants to go

21   back to Mexico.

22        My motion for downward departure goes to the -- there was an

23   additional point for an early plea, which was offered to my

24   client, and he had to take that plea on the day of arraignment.

25   On the day of arraignment, there was a problem where he had

1    to -- the Court appointed him --

2          THE COURT:   Yeah, what was that all about?  Why was that

3    filed for substitution?

4          MR. DIEZ:   I believe there was -- there was a public

5    defender representing him, and I was appointed because there was

6    a problem.  I don't know the exact nature of the problem, and

7    there was a problem.  The next day I approached the U.S.

8    Attorney after having reviewed the file and stuff like that and

9    asked him to please, you know, to consider that one additional

10   point because we were ready to plead and we have reviewed the

11   facts and I had spoken to my client.

12        And so I'm asking the Court to -- given the state of the

13   case and the fact that, you know, there's really not that much

14   we can do about the severity of the crime and the fact that it

15   was punishable so high, please to at least grant that extra

16   point and sentence him to the bottom of the guidelines, which

17   would make him then on 63 months.  He's still looking at more

18   than five years in prison.

19        And his family is here.  His wife came from Houston, and he

20   asked me to relate to the Court that she would like to say

21   something to the Court.  Pretty much what she wanted to tell the

22   Court is that she's willing to give her papers up for permanent

23   residence.

24          THE COURT:   I'm sorry.  She's willing to do what?

25          MR. DIEZ:   She's willing to return back her lawful

1    residence, and she wants to go back to Mexico with her husband.

2    The kids are desperate for their father.  The youngest one,

3    which is five, has pretty much never met his father because

4    of -- he spent all this time in prison.  And that is why we are

5    asking the Court to consider that extra point.

6         THE COURT:  Let me ask you this:  Does he have any kind

7    of criminal revocation pending?

8         MR. DIEZ:  Yes, Your Honor.

9         THE COURT:  And what is the period of time that he is

10   facing in -- is there a warrant in reference -- is the state

11   moving to do something on the revocation?

12        MR. PONCE:  That is reflected in paragraph number 28.

13   He's looking at five years on that parole revocation.

14        THE COURT:  I guess -- you didn't mention it in your

15   argument although I read it in your motion.  So in other words

16   the Government declines to stick with the additional one point

17   downward departure for an early plea?

18        MR. DIEZ:  Yes, Your Honor.

19        THE COURT:  All right.  Mr. Ponce?

20        MR. PONCE:  Your Honor, we are opposed to that simply

21   because we did confirm that Mr. Rey Cantu, on at least two

22   occasions, did remind him that that extra point was available

23   only up to the time of arraignment, and he did represent that he

24   conveyed this to his client.  Subsequently, he filed a motion to

25   withdraw.  Apparently there was some kind of conflict dealing

6

1   with the case between he and his client, and that's when

2   Mr. Diez came into the picture. And that was, from my

3   understanding, several days later, about a week or so.

4           THE COURT: Okay. So was the conflict not in the nature

5   of his finding out that he -- the public defenders' office or

6   somebody -- he himself had represented a material witness?

7           MR. PONCE: No, Your Honor. It was just that he

8   couldn't get along with his client from what I understand.

9           THE COURT: All right. Mr. Diez, is that what you

10  confirm? Was it not in the nature of Mr. Cantu having to

11  withdraw because of representing somebody who would be a

12  material witness? It was only because your client and he did

13  not get along?

14          MR. DIEZ: I believe that's what happened, Your Honor.

15  I was appointed I think pretty much on that same day, the

16  arraignment. And I met with the U.S. Attorney and pretty

17  much -- right after I got the file and met with my client, which

18  was the next day or the day after. And at that time the offer

19  was not offered.

20          THE COURT: I find there is no basis for a motion for

21  downward departure, so the motion is denied. All right.

22          Sir, anything you wish to say to the Court before you're

23  sentenced?

24          THE DEFENDANT: I first want to ask you for your pardon

25  for having returned to the country and have compassion in my

1  sentencing.   I ask for leniency.   And I promise you not to
2  return to this country, and I will take my family to Mexico.
3       THE COURT:  All right.   Then pursuant -- oh, I'm sorry.
4  Also, the guidelines -- or the presentence report has
5  recommended a sentence in the mid range.   Anything else on
6  behalf of probation?
7       THE PROBATION OFFICER:  Your Honor, Mr. Gonzales
8  recommended a middle range due to the fact that the defendant
9  committed the instant offense within two weeks after he was
10 released on parole -- or deported, and, secondary, his prior
11 criminal history.
12      THE COURT:  Mr. Diez?
13      MR. DIEZ:  Your Honor, just to please follow the plea
14 agreement that we have for the low end.   He is also looking at
15 the five years on the parole revocation.   He was coming to take
16 his family.   He didn't fully understood the impact of coming
17 back to the United States, that's why he reentered within the
18 two-week period.   He hadn't seen his family for a long time.
19 Now --
20      THE COURT:  Excuse me.   Where was he in custody?   Where
21 did he do time?
22      MR. DIEZ:  I'm not sure.
23      THE DEFENDANT:  Clemens unit, Cuero, Texas.
24      THE COURT:  Your family was able to go see you while
25 they were living in Houston?

10/05/2004 15:25 FAX 7137183302        US ATTY APPEALS
Case 1:04-cr00530 USO      Document 11-2      Filed in TXSD on 10/05/2004      Page 22 of 25

8

1              THE DEFENDANT:  Sometimes once a month.  Sometimes.

2              THE COURT:  All right.  Then pursuant to the Sentencing

3    Reform Act of 1984, the Court hereby sentences you to a term of

4    imprisonment of 70 months.  Upon release from imprisonment, you

5    shall be placed on supervised release for a term of three years.

6    During this three-year period, you have to comply with all

7    standard and mandatory conditions of supervised release that

8    include that you are not to violate the law, state, federal or

9    local.

10             Sir, please understand that during this three-year period

11   after your release from prison, even if you are deported, you

12   have the obligation to comply with all standard and mandatory

13   and special conditions of supervised release.  That means that

14   should you commit another crime during this three-year period,

15   you may be brought back into court in connection with this case

16   and be ordered to serve more time than the 70 months that I'm

17   ordering today.  Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And if, for example, you are charged with

20   and are found guilty of the very same kind of crime that I found

21   you guilty of today, the sentence that you face in the future

22   may very well be greater than the 70 to 87 months you are facing

23   today.  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And so, for example, if you were to be found

1   in this country illegally and be found guilty of this crime

2   again, and, for example, if you were to get a sentence of 87

3   months in that case, you may be brought back here in connection

4   with this case and be ordered to serve, let's say, another term

5   of imprisonment such as 24 months. So that would be 24 months

6   plus the 87 months. Do you understand that?

7           THE DEFENDANT: Yes.

8           THE COURT: And those sentences may very well be run

9   consecutive to each other rather than concurrent. Do you

10  understand that?

11          THE DEFENDANT: Yes.

12          THE COURT: And, again, if you return to this country,

13  the sentence which you face may very well be greater than the 70

14  to 87 months. I believe I told you that. The conditions shall

15  also include that you are not to illegally possess or illegally

16  consume a controlled substance, that you are not to possess a

17  firearm or other destructive device, and, again, you are not to

18  reenter the United States illegally.

19      Do you understand that your family circumstances, you know,

20  are not a reason for -- it's not a legal defense for you to come

21  back to this country, the fact that you wanted to see your

22  family. It's a hard law, but it's a law you have to live with,

23  and your family unfortunately has to live with the consequences

24  of it as well. The Court finds that you are indigent and are

25  unable to pay a fine, and, therefore, waives the imposition of a

Finally, I did not object to the sixteen level increase because he had two prior aggravated felony convictions that met the definition of a 16 level increase. In addition, I did not object nor appeal this increase or a sentence in excess to two years because there was no legal basis for an objection and/or appeal. Finally, Mr. CARDENAS-Najera did not instruct me to file an appeal.

FURTHER DECLARANT SAYETH NOT.

JAIME DIEZ
ATTORNEY AT LAW

SUBSCRIBED AND SWORN BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, ON THIS THE _1st_ DAY OF _October_, 2004.

MARIBEL STURGEON
MY COMMISSION EXPIRES
March 14, 2007

## CERTIFICATE OF SERVICE

I, David H. Peck, Assistant United States Attorney, certify that a copy of this answer to Jose E. Cardenas-Najera's motion for relief under § 2255, and motion for summary judgment has been served by placing it in the United States mail, postage prepaid, on October 5, 2005, addressed to:

Jose E. Cardenas-Najera, <u>pro se</u>
Registration No. 23070-179
F.C.I. Beaumont
P.O. Box 26030
Beaumont, Texas 77720


David H. Peck
Assistant United States Attorney

-19-